# Forsyth *versus* Matthews.

1. This court will confine its attention to what is presented in the bill of exceptions, and its proper appendages.

2. A bill of exceptions may contain a recital *in extenso* of the evidence, or may consist of a condensed statement of such of the facts proved, or which the tesmony tended to prove, as is necessary to comprehend the points ruled, and the instructions to the jury.

3. Where there is conflicting evidence as to a change of possession of personal property, after a sale of it, it should be referred to the jury.

4. Though actual possession be taken, yet if the sale were made to defraud creditors, it is void as to them; but whether this were so or not, is a fact for the jury.

5. The transfer by a son, in failing circumstances, of his personal property to his father, may excite suspicion of fraud; but it is not fradulent *per se.* Whether fradulent or not, is for the jury.

6. That personal property is transferred by a formal instrument of writing, is usually but a slight circumstance in the question, as to the existence of fraud in the transaction.

ERROR to the District Court of *Allegheny county.*

This was an action of trespass brought by George Matthews against Forsyth, for levying, as sheriff, on certain personal property on an execution in favor of Weaver against Edwin C. Matthews, who was the son of plaintiff.

Edwin C. Matthews had been the sub-lessee of an eating-house, and whilst carrying it on, he contracted a debt with Weaver. To secure this claim and to enable him to get a further credit, he confessed a judgment in favor of Weaver for $351, before a justice of the peace. The judgment was to be paid in instalments of thirty-five dollars every ten days. The first instalment came due on the 13th June, 1838. Execution issued, and was returned "no goods." About six days after the first instalment fell due, Edwin C. Matthews transferred by bill of sale to his father, the plaintiff in this suit, the leasehold, bar-fixtures, furniture, liquors, &c. It was alleged that there was no visible change of possession, the son continuing at the eating establishment as formerly, and carrying on the business. All the instalments having matured, a transcript of the judgment was filed in court, and in September, 1848, plaintiff was allowed to take out execution. An execution issued, and the personal property in the eating-house was sold. The plaintiff, George Matthews, claimed the property, and brought suit against Forsyth, the sheriff, for the seizure and sale.

Verdict for the plaintiff for four hundred dollars.

The bill of exceptions stated, *inter alia:*

[Forsyth *v.* Matthews.]

BILL OF EXCEPTIONS.

GEORGE MATTHEWS ⎱  *In the District Court of Allegheny county.*
  *v.*  ⎰
JOHN FORSYTH.    No. 202, January Term 1849.

Be it remembered that in the January term, 1849, came the above named plaintiff and impleaded the above named defendant of a plea of trespass for wrongfully seizing and taking away the chattels of the said plaintiff, (*prout narr.,*) and thereto the defendant pleaded not guilty, and issue was joined thereon.

And afterwards, to wit, on the 21st of December, before Hon. Walter H. Lowrie, assistant judge of said court, the said issue came on to be tried by a jury, and the plaintiffs having then and there proved the fact of the trespass complained of, did further give evidence tending to show that on and before the 19th of June, 1848, the goods in controversy had belonged to one Edwin C. Matthews, and that on the said 19th of June, the said Edwin C. Matthews, by an agreement in writing, a copy whereof may be hereto annexed as part of this bill, sold and transferred the same to the plaintiff, George Matthews. And the said agreement was then and there produced and read in evidence to the jury.

And the plaintiff did then and there further give evidence, tending to show that the consideration of said agreement had been paid by the plaintiff; part of it in discharge of the debts of said Edwin, and that the possession of the said goods had been delivered to him at the date of said agreement. That the said goods consisted of the furniture and stock of an eating-house in Pittsburgh, and that the said Edwin was badly doing in management thereof, and that, after the said purchase, the whole business of said house had been conducted by the said plaintiff, in his own name. Whereupon the defendant, in order to meet and rebut the evidence so produced and given by the plaintiff, as to the title of said plaintiff to the goods in controversy, did call and produce witnesses, and by them gave evidence tending to show that there had been no open and manifest change of the possession, in pursuance of the sale by Edwin C. Matthews to George Matthews. Also showing that at the time of the said sale, the said Edwin C. Matthews was considerably in debt, and especially to Jacob Weaver, whose claim was ripe for execution. That the alleged trespass was committed as sheriff of Allegheny county, by seizing in execution the said goods as the property of the said Edwin C. Matthews, at the suit of the said Jacob Weaver, and that the said Edwin C. Matthews was the son of the said George Matthews. And hereupon the court instructed the jury, that an assignment of personal property, without an actual transfer of the possession thereof, gave no title to the assignee as against the creditors of the assignor. If, therefore, there was no such transfer, the plaintiff cannot recover.

L 2

[Forsyth *v.* Matthews.]

If there was such a transfer, and the said assignment was made for the purpose of defrauding the creditors of the assignor, and the assignor participated in such fraudulent purpose, then the plaintiff cannot recover. You are the judges, under the evidence, whether such fraudulent purpose existed.

An assignment of all a man's property, when he is largely in debt, naturally excites suspicion of fraud, and is therefore evidence of fraud. If there be a judgment just ripening. for execution at the time of the assignment, this increases the suspicion, and adds weight to the evidence. That the transaction is between a father and son makes the transaction still more suspicious, because the father is supposed to be better acquainted than other people, with the embarrassed circumstances of his son. Yet you may think it not unreasonable, that a father should buy out a son who is succeeding badly in the business in which he was engaged, and apply the consideration of such purchase to pay the debt of said son.

Great stress has been laid upon the formal written character of this transfer, but you will not, perhaps, consider this as being of much importance. Perhaps all such transfers should be expected to be in writing.

The peculiarity of form depends upon the person who is employed to write the instrument. An old lawyer would write it one way, a young lawyer in another, and a merchant's clerk in another way. I cannot see that the form which one would adopt, should be more liable to the charge of fraud on its face, than the form adopted by any other:

To which instructions the defendant's counsel did then and there except, and a verdict was rendered in favor of the plaintiff.

And inasmuch as the said matters do not appear by the record of the verdict aforesaid, the counsel for the defendant proposed the said exception to the judge, and requested him to put his seal to the bill of exceptions, which is done accordingly, this day.-

WALTER H. LOWRIE, Assistant Judge.

It was assigned for error:

1. The court erred in leaving the ·case, under the evidence, to the jury, and charging them that they were the judges, under the evidence, whether a fraudulent purpose existed.

2. In not charging the jury that, under the evidence, the sale and transfer of the property was made for the purpose of preventing the creditor from obtaining execution on his judgment, and that the sale was *mala fide*, and void, as against such creditor.

3. The court erred in not charging the jury, that a party claiming. against such creditor, is bound to remove .all doubt of the fairness of the transaction, even if possession has accompanied the transfer.

[Forsyth *v.* Matthews.]

4. The court erred in not charging the jury that, under the evidence, there was no transfer of the property, accompanied with a corresponding change of possession, and that the said sale was therefore void as against creditors.

5. The court erred in charging the jury, under the evidence, that it was not unreasonable a son should sell to his father.

6. The court erred in charging the jury, that the character of the paper, purporting to be a bill of sale of said property, was not of much importance.

The case was argued by *McCandless*, for plaintiff in error.
*Geyer* was for defendant, but the court declined to hear him.

The opinion of the court was delivered by
BELL, J.—In this case the writ of error brings up a formal bill of exceptions, duly sealed by the judge before whom the cause was tried. Were it not that the carelessness of practice in many of our judicial districts, and the loose manner in which records in error are made up, has almost banished the formal bill of exceptions, it would be scarcely necessary to remark, that in reviewing the action of the subordinate tribunal, a court of error is strictly to confine its attention to what is presented by the bill, and its proper appendages. It may contain a recital, *in extenso*, of the evidence given on the trial, or, as in this instance, it may consist of a condensed statement of such of the facts proved, or which the testimony tended to prove, as is necessary to the proper comprehension of the points ruled by the court, and the instructions given to the jury.

The bill before us, after stating the sale of the goods in question, by Edwin C. Matthews to the plaintiff below, and the consideration of the contract, avers that the evidence tended to show the possession of the goods sold had been delivered to the purchaser, at the date of the agreement of sale; after which the latter conducted the eating-house, in which they were found, in his own name. On the other hand, the defendant below gave evidence tending to show there had been no open and manifest change of possession, in pursuance of the sale. Here, then, was a conflict of testimony, which must necessarily be referred to the jury. This the court did, with the instruction that an assignment of personal property, without an actual transfer of the possession, gave no title to the assignee, as against the creditors of the assignor; and if there was no such transfer of possession, the plaintiff could not recover. This was certainly correct. Had there been no proof of a transfer of possession, correspondent with the sale, it would have been incumbent on the court to direct the jury, as matter of law, that as against creditors the sale was naught, and therefore the plaintiff could not recover: 2 *Watts & Serg.* 147. But under

[Forsyth *v.* Matthews.]

the contrariety of proof which appears to have been given here, whether there was an absolute change of possession or not, was a question for the jury. Had the court undertaken to assert, authoritatively, the presence of a legal fraud, it must have been an usurpation upon the other branch of the tribunal, and consequently error.

The instruction that if the sale and transfer of possession was made for the purpose of defrauding the creditors of the vendor, the plaintiff could not recover, was also unexceptionable. Such an intent imports actual fraud, destructive of a sale of goods, irrespective of the actual possession of them. Its existence or non-existence is a fact to be determined by the jury; and when it is found, the court declares its legal consequence. This, in effect, was the course pursued on the trial of the cause; of which the defendant below complains, apparently under the misapprehension that it was the duty of the judge to declare both the fact and the law, as the evidence stood there: a misapprehension, which is sufficiently refuted, by pointing it out.

The remaining portions of the charge, to which the assignments of error refer, are in strict accordance with settled principle. The transfer to a father of his child's personal property, when the latter is deeply indebted, and more especially, if he be in danger of an immediate execution, naturally arouses suspicion of fraud, and adds to the weight of other evidence, tending to prove it.

But such facts are not necessarily, *per se*, proof of fraud. They may be consistent with innocence, though deeply suspicious; and the effect legitimately to be inferred from them, it is the province of the jury to deduce. Upon this province, the learned judge below, did not seek to intrude.

What was said by him of the so called bill of sale, is but the expression of a sentiment, relative to matter of fact, which even if incorrect, is not the subject of error in this court. But I do not perceive any thing objectionable in the remarks submitted on this point. Such evidences of sale are common, and being usually prepared by attorneys or scriveners, naturally assume a technical form. I remember what is said in *Twyne's Case*, as to the inferences of fraud deducible from unusual pains and care taken in the preparation and conduct of a suspicious transaction; but I cannot see that it is fairly applicable here. Written transfers of personal chattels are frequently used, as an easy and convenient medium of proof; and it would be going very far to say, that much importance is due to their presence, as indicia of fraudulent motive. Still, under certain circumstances, such a precaution may weigh something in the scale of nearly balanced doubts, and the right of the jury to consider it, in this connection, is nowhere denied by the charge.

Judgment affirmed.