## Dunlap *versus* Bournonville.

Where two brothers in failing circumstances sold the stock in trade of a coach manufactory to a third brother, in consideration of debts assumed by him for them, and he went into possession and continued the business at the same place, had the sign changed to his own name, opened a set of books, procured another book-keeper, the vendors remaining in his employ, each of them superintending a particular department of the work at stipulated wages,

It was *Held,* That there was not such a want of a corresponding change of possession, under the circumstances, as would authorize the court to say, *as matter of law,* that the sale was void as against creditors.

Where the transfer of possession corresponds with the sale, and the nature of the property sold and the relations of the parties, the sale will be valid, unless fraudulent in fact.

ERROR to the District Court of *Philadelphia.*

This was a feigned issue to try the right to certain property, seized by the sheriff of Philadelphia county, on an execution against John and Abraham H. Dunlap, issued at the suit of Anthony Bournonville, and which said property was claimed by William Dunlap, the plaintiff in error in this case.

John and Abraham Dunlap had been carrying on the business of coachmaking in Philadelphia. In the month of September, 1854, they became embarrassed, and asked an extension of time from their creditors. On the 18th of September they effected an arrangement with a portion of their creditors, giving William Dunlap as security in a judgment-bond confessed to secure those creditors; and the wife of William Dunlap mortgaged some property held in her own right for that purpose—they agreeing to sell to him all their stock in trade, including the property in dispute.

This latter agreement was consummated by a bill of sale executed on the 11th October, 1854, reciting the debts assumed by William as the consideration. William had been about the establishment before the sale, and, as one of the witnesses said, did the financiering.

After the transfer he took possession, changed the sign to his own name, procured a new book-keeper, and opened a new set of books.

John Dunlap remained as foreman of one of the shops, at the wages of $10 per week; and Abraham as foreman of another department, at $12 per week.

Bournonville had brought suit on the 25th January, 1854; and, the day after the transfer to William, obtained judgment against John and Abraham Dunlap for the sum of $608; and upon this the *fieri facias* was issued. The sheriff levied on fifteen York wagons; and they being claimed by William Dunlap, at the instance of the sheriff, the claimant and the plaintiff in the execution were ruled to interplead, under the provisions of the Act of

[Dunlap v. Bournonville.]

10th April, 1848; and the parties appearing, the court directed this issue to try the right to the said property, and in which William Dunlap, the claimant, was made plaintiff, and Anthony Bournonville, the plaintiff in the execution, defendant.

On the trial in the court below, after the plaintiff had shown the foregoing facts and concluded his evidence, the judge who presided at the trial directed a nonsuit, on the ground that the sale was void, because there had not been a corresponding change of possession.

The District Court in banc refusing to take off the nonsuit, the plaintiff sued out this writ, and assigned the ordering of the nonsuit by the court below for error.

*Bullitt*, for plaintiff in error.

*Remak*, for defendant in error.

The opinion of the court was delivered by

LOWRIE, J.—The evidence tends to show that there was an actual transfer of the property in pursuance of a sale made for a sufficient consideration; that the vendee took the whole management of the concern; that the sale was to a brother, made about the first of October, and completed by a bill of sale executed on the 11th; that the vendors continued afterwards about the establishment as workmen in the employ of their brother, the vendee; that the vendors were in failing circumstances, and that the sale was made as a means of paying a large amount of their debts assumed by the vendee; that, before the sale, the vendee was frequently about the establishment, and seemed to have some employment there; and that, after the sale, the sign of the vendee was substituted for that of the vendors. The creditor who contests the sale had commenced suit near two years before the sale, and obtained judgment by confession the next day after it was completed.

Of course this sale was treated as a nullity in the court below, not because it was in fact fraudulent, for the court could not declare that fact; but because it had not been conducted in the form which is deemed essential for the protection of creditors, and subsequent purchasers. Now certainly there is no law prohibiting persons, standing in near relations of business or affinity, from buying from each other; or requiring them to conduct their business with each other in special form. And certainly the cases of McVickar v. May, 3 *State R.* 224, and Forsythe v. Mathews, 14 *Id.* 100, do show that, if there be an actual transfer, it is not vitiated because of the intimacy of the business relations that continued after the sale, when that is naturally accounted for by the affinity of the parties. The former case was a sale by a father to

[Dunlap *v.* Bournonville.]

his son; and, as we understood it, the transfer was considered sufficient on the ground that, intimate as were the relations of the parties after the sale, "the son's possession and use of the goods were exclusive." The latter case was a sale by a son to his father, and though the business continued to be conducted in the same place, and with the assistance of the son; yet, there being evidence of an actual transfer of the possession and control of the property, the sale was sustained. The case of Avery *v.* Street, 6 *Watts* 247, is of the same character.

In the case of Childs *v.* Simmons, decided at Pittsburgh several years ago and not reported, the sale was by a storekeeper to his clerk, who had no means, and on very long credit, and the vendor dwelt in the house and continued to aid in the store; but the sign was changed; yet the sale was sustained. In Hugus *v.* Robinson, 24 *State R.* 9, the sale was to one who had very recently been the vendor's clerk, and after the sale there was no change of the sign, and the vendor continued as in the foregoing case; and these circumstances were not regarded as vitiating the sale. To the same purport is Faunce *v.* Leslie, 6 *State R.* 121.

It must be, therefore, that where there is a transfer of possession corresponding with the sale, and with the nature of the property sold, and the relations of the parties, and such as is naturally expected under the circumstances, and it does not appear is a mere sham or cover; then the forms of the law are complied with, and the sale is valid, unless actual fraud be shown. Certainly a mere formal or symbolical delivery will not avail, where an actual one is reasonably practicable, and such is its character where the real control is retained by the vendor or immediately resumed by him: 2 *W. & Ser.* 167. But if there be an actual delivery, open and visible, 5 *State R.* 326, presenting the appearance, under the circumstances, of being made with the *bona fide* intention of transferring the possession as well as the title, then we cannot say, as matter of law, that it is inadequate for its purpose. These views show that this case ought to have been submitted to the jury to decide whether there was an honest sale and transfer of this property.

Judgment reversed and a new trial awarded.