# Billingsley *versus* White & Sparhawk.

1. An actual and continued change of possession is essential to the validity of a voluntary sale of chattels as against creditors.

2. If the vendor retains possession or the delivery is merely formal or constructive, the sale is fraudulent in law, without reference to the intent of the parties.

3. Where there has been an actual and continued change of possession, the court cannot pronounce the sale fraudulent in law; it must be left to the jury to determine whether it is fraudulent in fact.

4. To prevent the sale from being fraudulent the vendor must make to the vendee an actual delivery, such as the nature of the property and circumstances of the sale will reasonably admit and as the vendor is capable of making.

5. There must be an actual separation of the property from the possession of the vendor at the time of sale or within a reasonable time afterwards, according to the nature of the property.

6. Separation of the property from the vendor's possession means only a change of his relation to it as owner, and consists in the surrender and transfer of his power and control over it to the vendee.

7. The acts to show this must be so open and manifest as to make the change of possession apparent and visible, and if there are such palpable tokens the sale will not be fraudulent in law, although the vendor may act as agent or servant of the vendee in the management and disposal of the property; provided his acts are professedly and apparently not as owner but as agent and servant, and are so understood by those with whom he deals.

[Billingsley v. White.]

8. If the circumstances in connection with the transaction rendered the possession of the vendee doubtful or ambiguous they would avoid the sale.

November 16th 1868.    Before THOMPSON, C. J., READ, AG-NEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Fayette county:* No. 127, to October and November Term 1868.

This was an issue of June Term 1868, under the Sheriff's Interpleader Act, in which Jacob D. Billingsley was plaintiff, and John P. White and John Sparhawk, trading as White & Sparhawk, were defendants.

On the 7th of October 1867, White & Sparhawk obtained a judgment for $166.65, against James Billingsley and Wilson Patterson, trading as Billingsley & Patterson, on which, in December following, they issued execution and levied on the goods in controversy in this issue. The goods were claimed by Jacob D. Billingsley, a brother of James Billingsley, under a sale from Billingsley & Patterson, made March 7th 1868.

The plaintiff in the issue called Wilson Patterson, who testified: Billingsley & Patterson in 1866, and until March 1867, were in mercantile business at Cookstown, Fayette county. On the 7th of March they sold their stock to Jacob Billingsley, at the wholesale price in Pittsburg, including the cost of carriage. The goods were inventoried on the 7th and 8th, and amounted to $1152.89. Final possession was given to Jacob on the 9th. He paid for the goods $552 in cash, and a note at six months for $600, which was paid at maturity. After the sale Patterson rented some land and commenced farming. James continued in the store as a hired· hand under a contract with Jacob for $1 per diem. On the 16th, witness out of the $552 paid a firm-debt to G. W. Dilworth in Pittsburg, and gave notice to the firm-creditors there that Billingsley & Patterson had sold out. The book-debts due to the firm were more than sufficient to pay all the firm-debts at the time of sale. Witness lived across the. street from the store, and occasionally but not often sold goods after the sale. Jacob resided at California, Washington county, at the time of the sale, and has continued to reside there. He often came to Cookstown and returned the same day; was more there than at California. After the sale James remained and sold goods up to the time of the sheriff's levy. Plaintiff gave evidence that on the 9th of March a notice from Billingsley & Patterson was put on their store-door, that they had sold out and requested their debtors to pay, and that the same notice was posted in other places. He also gave evidence of owning $500 in July 1866.

The defendants gave evidence for the purpose of showing that the sale to Jacob was colorable and fraudulent.

The court (Gilmore, P. J.) charged the jury, that there was

9 P. F. SMITH—30

not a sufficient delivery of the goods to make the sale good, but that it was in law fraudulent and void against creditors, and that the verdict must be for the defendants.

The verdict was for the defendants. The plaintiff removed the case to the Supreme Court, and assigned the charge of the court for error.

*J. Collins* and *A. E. Willson*, for plaintiff in error.—There was no evidence that James Billingsley bought or sold anything on his own account or the account of the old firm after the sale to Jacob, as in Hugus v. Robinson, 12 Harris 9. As there was proof of the hiring of James, the *court* could not decide that the sale was void. His presence might have been accounted for by his relationship to Jacob: McVicker v. May, 3 Barr 224; Forsyth v. Matthews, 2 Harris 100. They cited and commented on Dunlap v. Bournonville, 2 Casey 72; Steelwagon v. Jefferies, 8 Wright 412; Barr v. Reitz, 3 P. F. Smith 258; Benford v. Schell, 5 Id. 395; Chase v. Ralston, 6 Casey 539.

*W. H. Playford* and *A. Howell*, for defendants in error, referred to Clow v. Woods, 5 S. & R. 286; Milne v. Henry, 4 Wright 358; Barr v. Reitz, Steelwagon v. Jefferies, *supra;* Brawn v. Keller, 7 Wright 106; Edwards v. Harben, 2 Tenn. R. 587; Babb v. Clemson, 10 S. & R. 419; Dewart v. Clement, 12 Wright 414.

The opinion of the court was delivered, January 4th 1869, by

WILLIAMS, J.—An actual and continued change of possession is essential to the validity of a voluntary sale of chattels as against creditors. If the possession is retained by the vendor, or if the delivery is merely formal and constructive, the sale will be regarded as fraudulent in law, without reference to the intent of the parties. But if there has been an actual and continued change of possession, the court cannot pronounce the sale fraudulent in law, but must leave the jury, whose province it is, to determine whether or not it is fraudulent in fact.

What then constitutes such a change of possession as the law requires in order to prevent the sale being declared fraudulent? Undoubtedly the vendor must deliver to the vendee the possession of the property in order to consummate the sale, and render it valid as against creditors. The delivery must be actual, and such as the nature of the property or thing sold, and the circumstances of the sale will reasonably admit, and such as the vendor is capable of making. A mere symbolical or constructive delivery, where an actual or real one is reasonably practicable, is of no avail. There must be an actual separation of the property from the possession of the vendor at the time of the sale, or within a

[Billingsley *v.* White.]

reasonable time afterward, according to the nature of the property: Barr *v.* Rietz, 3 P. F. Smith 258.

But is it essential to such separation that the property shall be removed from the vendor, or the vendor from the property, so that there shall be an actual and visible separation between them, measurable by space or distance? Must the vendor absolutely cease to have any connection or contact with the property after its delivery, not as owner, but as the agent or servant of the vendee, on pain of having the sale declared fraudulent? To hold this would be going beyond the established doctrine of our own decisions, and the reason and requirements of the law. Separation of the property from the possession of the vendor implies nothing more than a change of the vendor's relation to it as owner, and consists in the surrender and transfer of his power and control over it to the vendee.

But in order to prevent fraud the law requires that this shall be done by such appropriate and significant acts as—if done in good faith—shall clearly show the vendor's intention to part with the possession of the property and transfer it to the vendee. And these acts must be so open and manifest as to make the change of possession apparent and visible. If there are such palpable tokens and proofs of the vendor's surrender of his dominion over the property as owner, and of the transfer of his possession to the vendee, the sale will not be declared fraudulent in law, although the vendor may act as the agent or servant of the vendee in the management and disposal of the property, provided that his acts are professedly and apparently done, not as owner, but as the agent or servant of the vendee, and are so understood by those with whom he deals. If the change of possession is otherwise sufficiently shown, the mere fact of such agency is not, and never has been held to be, such a badge of fraud, or evidence of retained possession, as to render the sale invalid.

In the case before us the evidence of the sale and actual delivery of the goods was positive and uncontradicted. The vendors, Billingsley & Patterson, were engaged in mercantile business in Cookstown, and, on the 7th of March 1867, they sold their stock of goods to the plaintiff, and on the 9th of March, after the completion of the invoice, they delivered to him the possession; and at the same time he paid them part of the price in cash, and gave them his note at six months for the residue, which was paid at maturity. The goods were invoiced at Pittsburg wholesale prices, including cost of carriage.

Notice of sale and change of possession was given by advertisements put up on the door of the store, and in at least two other public places in the town or borough; and personal notice thereof was given to all the creditors of the firm in Pittsburg. Immediately after the sale the plaintiff took possession of the store, and

began to conduct the business in his own name and on his own account, and continued to carry it on for a period of ten months, when, in January 1868, the sheriff seized and sold his stock of goods upon the defendants' execution as the property of Billingsley & Patterson.

There was positive evidence that the advertisements giving notice of the sale were seen and read, and that it was known that the plaintiff was carrying on the business. The fair and reasonable inference from all the evidence is, that the sale was well known in the community, and that the customers of the firm, who dealt with the plaintiff after the sale, knew that he was carrying on the business in his own name, and apparently on his own account. There was not a particle of evidence tending to show that either Billingsley or Patterson, after the sale to the plaintiff, ever bought or sold any goods, or did any other act professedly or apparently in the name of the firm, or that either of them had any connection with the plaintiff's business, except as his agent or employee.

Patterson rented a field and went to farming, but because he sold a few goods in the store after the sale to the plaintiff, and Billingsley acted as plaintiff's clerk or salesman under a contract of hiring, the court declared there was no such evidence of delivery or change of possession as the law requires, in order to render the sale valid as against creditors. Do these circumstances, then, in connection with the other facts of the case, constitute such a badge of fraud, or evidence of retained possession, as to render the sale fraudulent in law? They would undoubtedly be sufficient to avoid the sale if they had the effect of rendering the possession of the plaintiff doubtful or ambiguous. But if they did not, why should the sale be declared fraudulent? If no one was misled, or deceived by the conduct of the parties, if their relations to each other and to the goods in question were well understood by those who dealt with them after the sale, and if their acts and declarations, accompanying and following the delivery, furnished such evidences of an apparent and actual change of possession as to satisfy the community, why should not these evidences be sufficient to satisfy the requirements of the law?

If those who dealt with the plaintiff after the sale had no doubt in regard to the character of his possession, why should the law regard it as doubtful or ambiguous? If Billingsley's acts and declarations as a salesman had been such as to leave it doubtful whether he was acting as owner or agent, then his presence and connection with the goods would have been such evidence of retained possession as to render the sale fraudulent. But if his acts and declarations were professedly and apparently those of a mere agent, and were so understood by the parties with whom he dealt, as all the evidence tends to show, then they constituted no

[Billingsley v. White.]

such badge of fraud or evidence of retained possession as would justify the court in declaring the sale fraudulent.

The facts of this case are wholly unlike those in the case of Milne, Brown & Co. v. Henry, 4 Wright 352, and kindred cases. In the case cited the evidence did not show any change of possession whatever. The vendor carried on the business after the sale precisely as he had done before, with the same clerks and the same books. The purchaser's name did not appear in the books except in one or two instances, where he was charged with some goods. He was not engaged in the store, nor did he have any direction of its business. It was therefore a clear case of retained possession.

In the case before us all the evidence tends to show that the goods were actually sold and delivered to the plaintiff, and that he remained in possession of them, conducting the business in his own name for a period of ten months, without any doubt or question in regard to his ownership or possession. If the sale was not fraudulent in fact, which is a question for the jury, the evidence did not show such a case of retained possession, or a possession so doubtful or ambiguous, as to render the sale fraudulent in law.

Judgment reversed, and a *venire facias de novo* awarded.

READ and SHARSWOOD, JJ., dissented.