## William J. Steele, Plff. in Err., *v.* William Miller et al.

Where purchase is bona fide and for full consideration, the fact that actual possession and change of location of part of the goods, they having been in the hands of a bailee of vendor at the time, did not accompany the transfer, is not a sufficient badge of fraud from which to infer, as matter of law, that the sale was fraudulent as to creditors.

Evidence to prove delivery of goods, on sale alleged to be fraudulent as to creditors, reviewed, and held sufficient.

(Decided October 26, 1885.)

Error to the Common Pleas of Armstrong County to review a judgment in trespass for defendant. Reversed.

Judgments having been recovered against Labana Steele and

NOTE.—See note to Chase v. Garrett, *ante,* 16.

executions issued thereon, W. J. Steele purchased all his property, including his store, four horses, used for trotting and pleasure, a buggy, sleigh, and leasehold; and assumed and paid the execution debts and others, amounting to a full consideration for such sale. Subsequently, Miller, a constable, the defendant herein, levied upon and sold two of the horses, a buggy, and sleigh under judgment obtained by other creditors against Labana Steele for a debt contracted prior to the sale to W. J. Steele, and W. J. Steele brought this action of trespass therefor.

The judge below directed verdict for defendant, on the ground that the sale was fraudulent as to creditors, based on the absence of delivery of the property, and plaintiff took this writ of error.

*David Barclay* for plaintiff in error.

*Jno. F. Whitworth, J. M. Hunter,* and *J. S. Whitworth* for defendants in error.

OPINION BY MR. JUSTICE STERRETT:

In his general charge, the learned judge virtually concedes there was no evidence of actual fraud on the part of plaintiff in purchasing the property in controversy from his brother Labana.

In this he is sustained by the testimony, which shows that the purchase of the store and other property was bona fide and for a full consideration, all of which was applied to the payment of vendor's debts.

But, while he evidently considered the transaction untainted by actual fraud, he declared the sale void as to creditors, on the ground of legal fraud, in that there was no such delivery of the property to plaintiff and continued possession in pursuance thereof as the law requires, to pass title as against creditors of the vendor; and he, therefore, in answer to defendants' first point, instructed the jury "that, under all the evidence in the case, the plaintiff is not entitled to recover." These rulings of the court, in varied forms of expression, constitute the burden of complaint in the first six specifications of error.

It appears from the testimony that the contract of sale, September 18, 1883, between plaintiff and his brother, included stock of store goods invoiced at $2,500, four horses, buggy, sleigh, and leasehold, amounting in all to nearly $3,800.

The store goods, leasehold, and two of the horses are not involved in this controversy.

The trespass for which this suit was brought consisted in levying on and selling the remaining articles, *viz.*, buggy, sleigh, bay mare, and pony, as the property of the vendor.

When plaintiff purchased the property, the bay mare was in the custody and control of Mr. Harrison, who had her at the county fair in Butler. The pony was at Woodsfield, Ohio, in the care and custody of Messrs. Watson & Kerr. The buggy and sleigh were each in the custody of a liveryman at Apollo, where the vendor resided. When levied on by the constable, nearly three months thereafter, the bay mare and pony were in a stable leased by plaintiff from Mr. Artman on the day he purchased the property. The sleigh and buggy were in Mr. Henry's stable, where the latter had been kept for nearly three months.

All these articles were then in the actual custody and possession of George W. Steele, who was employed by plaintiff, about two months before, to take charge of and sell them for him.

On the day plaintiff purchased the property from his brother, the latter accompanied him to Harrison's livery stable, pointed out the buggy, and the person in charge was then directed by plaintiff to keep it subject to his order. Same evening plaintiff drove home in the buggy, and sent it back to Apollo with instructions to leave it at the stable he had leased from Artman.

They also went to the livery stable where the sleigh was stored, and plaintiff there requested the proprietor to keep it for him.

Shortly afterwards George W. Steele, as employee of plaintiff, took charge of both articles, and, as soon as the bay mare and pony were returned by those who had custody of them respectively, he took charge of them also.

On Monday after the sale, John Moore, employed by plaintiff for the purpose, took charge of the store, and, in connection therewith, had possession of one of the horses then in Apollo; and, during the time he was in charge of the store, he also had control of the Artman stable until George W. Steele took charge of the same, together with the property in contraversy.

After Moore left, plaintiff's brother was employed in and about the store, and while there he occasionally attended to the horses, but never claimed them, nor did he do anything with them in any other capacity than that of employee of plaintiff.

The foregoing is the substance of plaintiff's evidence in relation to the custody and possession of the property in controversy from date of his purchase until it was levied on; and there appears to be nothing in defendant's testimony that materially conflicts therewith.

When purchased by plaintiff, the property was in the custody of the vendor's bailees, and all that was reasonably necessary to effect a transfer of possession to him was done. The undisputed evidence shows at least a constructive delivery of all the property in controversy at the time of sale. As to the buggy and sleigh, the vendor surrendered his control over them to the vendee, and the latter took charge of them in the hands of the respective bailees, who thereupon became his bailees. Thereafter and until they were levied on, plaintiff, through his employees, was in possession of both articles. In like manner the custody and control of the bay mare and pony passed from the bailees of the vendor to the vendee, and so remained until they were seized by the constable on an execution against the vendor.

In view of the evidence, of which the foregoing is an outline, we think the learned judge erred in ruling as complained of in the first six specifications, and in directing the jury to find for defendants.

The general rule undoubtedly is that, to constitute a valid sale of personal property against execution creditors, there must be a delivery accompanied and followed by a continuing possession in the vendee. When the possession does not follow as well as accompany the transfer, it is a fraud in law without regard to the intent of the parties; but a sale of property in the hands of a bailee is an exception to the general rule. It is good without actual delivery, if the vendor does not retake possession. It is sufficient, also, if the vendee takes possession and leaves the property in the custody of the former bailee for a special purpose. Linton v. Butz, 7 Pa. 89, 47 Am. Dec. 501; Worman v. Kramer, 73 Pa. 386; Woods v. Hull, 81* Pa. 451.

There is nothing in the fact that some time after the sale plaintiff's brother was employed in the store, and while there had charge of part of the property in controversy, in connection with other employees of plaintiff. The testimony on that subject, if it amounts to anything, is at most very slight evi-

dence of either concurrent or resumed possession; and that would be a question for the jury, and not for the court.

When there has been a sufficient actual or constructive delivery to the vendee, and he is in actual possession, the fact that the vendor is employed as a clerk or servant in a capacity which holds out no indication of ownership does not constitute such a concurrent possession as the law condemns. Billingsley v. White, 59 Pa. 464; McKibbin v. Martin, 64 Pa. 352, 3 Am. Rep. 588.

In the former case it is said the vendor may act as the agent or servant of the vendee, in the management and disposal of the property, provided his acts be done, not as owner, but as the agent or servant of the vendee.

If the change of possession is otherwise sufficiently shown, the mere fact of agency is not, and never has been, held to be such a badge of fraud or evidence of retained possession as to render the sale invalid. In Crawford v. Davis, 99 Pa. 576, it is held that a change in the location of the property is not always essential to a valid transfer of title. If the purchase was in good faith and for a valuable consideration, followed by acts intended to transfer the possession as well as the title, and the vendee assumed such control of the property as to reasonably indicate a change of ownership, the delivery of possession cannot, as matter of law, be held insufficient.

Under such circumstances, if the evidence warrants it, the case should be submitted to the jury to determine whether the sale was in good faith or merely colorable.

There is very little, if any, importance in the circumstance that the property in question was not specified in the notice that was given in regard to the stock of goods.

The testimony was not such as to warrant the court in charging the jury as requested in defendants' first point,—"That, under all the evidence in the case, the plaintiff is not entitled to recover." And, hence, the seventh specification of error is sustained.

There was no error in affirming defendants' second point.

The points recited in the ninth and tenth specifications were not warranted by the testimony, and should not have been affirmed without qualification.

The principal error, however, was in holding that the sale

was fraudulent in law and in directing the jury to find for defendants.

Judgment reversed, and a *venire facias de novo* awarded.