# Cessna *versus* Nimick et al.

1. A change of the location is not in all cases necessary, to constitute a valid delivery of a chattel as against creditors. Due regard must be had to the character of the property, the nature of the transaction, the position of the parties and the intended use of the property.

2. If the purchase of a chattel be in good faith and for a valuable consideration, followed by acts intended to transfer the possession as well as the title and the vendee assumes such control of the property as to reasonably indicate a change of ownership, the delivery of possession as matter of law can not be declared insufficient.

May 11th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT J., absent.

[Cessna *v.* Nimick et al.]

ERROR to the Court of Common Pleas of *Bedford county:*
Of January Term, 1886, No. 299.

This was a feigned issue under the sheriff's interpleader acts,
wherein Alexander Nimick, George P. McBride and John S.
Slagel trading as Nimick & Co. were plaintiffs, and John Cessna
was defendant, to try whether or not the said plaintiffs,
Nimick & Co., are the legal owners of the pig iron levied on
by the sheriff of Bedford county by virtue of the writ of
*fieri facias* in favor of the defendant as the property of the
Kemble Coal & Iron Co., and whether or not, as such owners,
they are entitled to keep and retain the same against the exe-
cution of the said John Cessna, a creditor of said company.

The following are the facts of the case as they appeared in
the trial before BAER, P. J.

The Kemble Coal & Iron Company was a corporation which
was engaged in the manufacture of iron for some twelve or
fifteen years. The stockholders resided in the city of New
York. Their furnaces were located at Riddlesburg, Bedford
county, Pa. Nimick & Co. were commission merchants, and
most of the iron produced at Riddlesburg was consigned to
them from 1872 to 1884. On the 8th day of August, 1884,
Nimick & Co. obtained a judgment against the Kemble Coal &
Iron Company, for $132,734.84 and immediately issued a writ
of *fieri facias* on the same. On the 9th day of August, John
Cessna for himself, and in trust for some clients, obtained a
judgment for $14,546.60 and issued a writ of *fieri facias* on the
same. Nimick and Co. levied on all the personal property of the
defendant except seventeen hundred tons of pig iron which
became the subject of contention in this case. The sheriff
levied upon these seventeen hundred tons of pig iron upon the
writ of *fieri facias* in favor of John Cessna, and also levied
upon the other personal property of the defendant, the levy of
Cessna being subsequent in date to that of Nimick & Co.
Nimick & Co. instructed the sheriff not to levy upon this iron,
because they claimed to have purchased it from the defendant
at a private sale.

As soon as Nimick & Co. knew of the action of the sheriff
in levying upon this iron by virtue of the Cessna writ, they
informed him of their objection, and he at once notified the
parties of his intention to apply to the court for the protection
allowed to sheriffs by virtue of the interpleader laws of the
state. Proceedings under these laws were had which resulted
in the order of the court for a trial by jury of the questions of
fact " whether or not the plaintiffs are the lawful owners of
the pig iron so levied upon by the sheriff of Bedford county by
virtue of the writ of *fieri facias* aforesaid " (Cessna's writ) " as
the property of the Kemble Coal & Iron Company; and as

[Cessna *v.* Nimick et al.]

such owners are entitled to keep and retain the same against the execution of the said John Cessna, a creditor of said company."

Much evidence was taken which was conflicting. The parties differed as to the facts of the case in their statements in their paper books. The following is taken from the charge of the Court.

The plaintiffs allege that in some way they became uneasy or dissatisfied and demanded iron in payment of the debt, according to the original understanding alleged by them at the time they agreed to accept the drafts; and one of the firm, John S. Slagle, went to Riddlesburg, where the Kemble Coal & Iron company's furnace was located, and there bought from Rezin A. Wight, the secretary and treasurer of the Kemble Coal & Iron Co., all the iron then ranked on the docks or yards of the company in part payment of the large indebtedness due this firm. They allege that they went upon the yard and that Wight made a formal delivery, after sale of this property to them, by saying, "I deliver this iron to you; it is now yours." And that a bill of sale was made and given to them, and that a receipt was drawn and given for the amount and value of the iron at the price per ton agreed to be paid, which was the current rate then prevailing in Pittsburgh, on the basis of the furnace weight, and that the iron then in the plaintiffs' yard and elsewhere was also sold at a price agreed on, and a like receipt given in part payment of this account.

It is also alleged by the plaintiffs that the weights were to be taken from the furnace books, and upon a question being raised as to a custom of the furnace making an allowance for sandage when the iron was weighed as taken from the furnace, it was thereupon agreed that if there should be found to be a deficit in weight, that is, if there should be less than the amount appearing on the books of the furnace, Nimick & Co. were to run the risk of that and lose it; but, as on so large an amount it was thought possible there might be as much as one hundred tons of over weight, Mr. Slagle for Nimick & Co. agreed with Wight that in consideration of the probable over-weight his firm would, in addition to paying the current weight prevailing at Pittsburgh, also pay the freight from Riddlesburg; and that the iron was bought in payment of so much of the firm's debt as it would cover, and it was not to be re-weighed.

It is also alleged by the plaintiffs that after so buying, passing receipts, making bills of sale, and going on the yard and saying, "I deliver to you this iron," that Mr. Slagle, for his firm, engaged Mr. Kelly, a superintendent in the employ of the Kemble Coal & Iron Co., to cause the pig iron to be

[Cessna v. Nimick et al.]

marked with the letter "N," which the plaintiffs allege is a mark they use on iron which they buy, and that Mr. Kelly got Stephen Burns, an employee, who immediately went to work and marked the ranks on the ends and on one side so as to be plainly visible, putting the letter N on the face of the pigs, and that Burns occupied the afternoon of the 23d of July, when the bargain was made, and the whole of the forenoon of the 24th, the day following, in marking this iron; and that this was done at a time when the employees were at work about the furnace, passing to and fro and could readily see what was going on, and that they did see what was going on. The plaintiffs further allege that Burns, while so engaged said to inquirers, "the iron has been sold," and also that the sale was next day talked about by the men at the furnace who were called here as witnesses. It is proper to say in this connection, for fear I forget it, that the defendant alleges that Burns swore on the stand that he was told to keep it secret, and was not told afterward that he need not do so.

The plaintiffs also allege that Mr. Slagle and Mr. Kelly at once called upon the railroad company for cars on which to ship the iron, that Kelly subsequently urged the railroad company to furnish more cars, and that Slagle made efforts from time to time to procure cars from the Pennsylvania Railroad Co. in order to ship this iron as rapidly as possible.

The plaintiffs also allege that the property was a large bulk of iron, not susceptible of immediate actual delivery by removal to another place; and they maintain that they made the bargain in good faith, for a valuable consideration and without intending to hinder, delay, or defraud creditors, and that they took such possession as was at the time practicable considering the nature of the property and the circumstances surrounding it, and that they at once began to remove the property by shipping from Riddlesburg, and having continued to do so as rapidly as the means and facilities of transportation would permit.

As against this the defendant alleges that the Kemble Coal & Iron Co. was insolvent. This cannot be denied.

The defendant presented, *inter alia*, the following points:

4. That if the sale of the iron on July 23d, 1884, was made of the entire quantity designated by ranks as piled in the yard, to be paid for at certain prices per ton, as shown by the book of the yard weights, the fact that the actual weights exceeded the weights appearing on the books would not invalidate the sale or render it fraudulent, if, at the time, it was known to the parties that the yard weights were an unfair estimate of the quantity.

[Cessna *v.* Nimick et al.]

Answer.    We shall now read this point as we· say the law is.

That if the sale of the iron on July 23d, 1884, was made of the entire quantity designated by ranks as piled in the yard, to be paid for at certain prices per ton, as shown by the book of the yard weights, the fact that the actual weights exceeded the weights appearing on the books would not, in itself, invalidate the sale or render it fraudulent; but if the over-weight is grossly excessive, it is evidence to be considered on the question of whether the sale was made in good faith.    If the sale was for a valuable consideration, made in good faith to secure payment to the creditor, Nimick & Co., and not to hinder, delay, or defraud creditors; and if the property was delivered in such way as the nature of the sale permitted by actual or constructive delivery, then the sale does not become fraudulent because of an unexpected over-weight of about 12 per cent. of the whole; if you find that in anticipation of some over-weight, a higher price per ton was agreed on for the iron.

5. That the evidence in the case as to over-weight would not justify the jury in finding the contract of sale fraudulent and void as to creditors by reason thereof.

Answer.    We say that of itself it would not.

6. That from all the evidence in this case the secretary and treasurer of the Kemble Coal and Iron Co., Rezin A. Wight, had the power and authority to make the sale of the iron to the plaintiffs, on the 23d day of July, 1884, and his acts are binding on the company and its creditors.

Answer.    We affirm this, and say that Rezin A. Wight, the secretary and treasurer of the company, could sell the iron to John S. Slagle, as he did in this case.

7. That the iron sold by Rezin A. Wight, secretary· and treasurer of the Kemble Coal & Iron Co., to the plaintiffs on the 23d of July, 1884, being the product of the furnace manufactured for sale, the fact that the sale included all the iron then on hand and was sold by yard weights would not, in itself, be evidence to invalidate the sale or render it fraudulent as to creditors.

Answer.    We affirm this.

8. The undisputed evidence in this case being that the plaintiffs, for a long period advanced from time to time to the Kemble Coal & Iron Co. large sums of money, aggregating a balance of about $220,000, on the 23d day of July, 1884, for which they were to receive the iron or the proceeds, and that after the crediting of the iron sold on the 23d day of July, and suit brought, the account was presented to the secretary and treasurer of the company who authorized the attorney

[Cessna v. Nimick et al.]

of said company to confess judgment for the same and judgment was accordingly confessed, these facts are entitled to great weight with the jury in determining the *bona fide* character of this transaction, as it was simply giving to the plaintiffs what they were entitled to under the contract when the money was advanced and the iron made.

Answer. This we affirm.

9. That if the Kemble Coal & Iron Co. was insolvent on the 23d of July, 1884, and that were even known to the plaintiffs, of which there is no evidence, it would not prevent the plaintiffs from securing payment of the indebtedness to them by a transfer of property, or render such transfer fraudulent as to creditors.

Answer. We affirm this point.

10. That the evidence in this case does not show such a case of retained possession by the vendors as to render the sale fraudulent in law, or in itself to warrant the inference of fraud; and if the jury believe there was no actual fraud in the transaction of July 23d, 1884, their verdict should be for the plaintiffs.

Answer. We say to you while the court, in a case where the evidence is undisputed, determines the question whether a given act is or is not a legal fraud, in this case, whether this was a legal fraud, that is to say, whether there was a delivery to this party or not, as you will understand it from the whole charge, we leave to you as a question of fact.

We propose to answer the eleventh, thirteenth, and fourteenth points of the plaintiffs together.

11. If the jury find that on the 23d day of July, 1884, the Kemble Coal & Iron Co. was indebted to the plaintiffs, Nimick & Co., in a sum exceeding $200,000 and on that day, in good faith, transferred to Nimick & Co. the iron in dispute then on their docks at the furnace, in payment of a portion of said indebtedness, that a bill of sale was executed and a formal delivery was made to Nimick & Co. by the secretary and treasurer of said company, that the iron was distinctly marked with the letter N, that Nimick & Co. then directed Mr. Kelly to take charge of the iron and ship it to them or upon their order as soon as possible, and in pursuance of that sale and under said orders the said Kelly, the same day, made application to the proper officers of the railroad company to furnish cars, and the next day commenced to ship the iron and afterwards urged the said officers to furnish cars more rapidly, and continued to load iron upon the cars and ship it as fast as cars were furnished, and were so engaged in shipping the iron until and when the execution of defendant was levied, then they had done all that the law required them to do to consti-

tute a sufficient delivery of that kind and the transaction would not be fraudulent in law, and their verdict should be for the plaintiffs.

13. If the plaintiffs on the day of the sale of this iron caused the same to be marked with their marks, this was an assumption of ownership, and if they at once ordered cars and, as soon as the same were procured, on the next day, began shipment of the iron up to the time of the sheriff's levy, this was such taking of actual possession of the property as to relieve the transaction from any question of legal fraud; and if the sale was honestly made, the plaintiffs are entitled to recover.

14. Considering the character of the property and the fact that the plaintiffs began to remove it the next day after they purchased it on the 23d of July, 1884, and continued to remove it, it was therefore not left in the possession of the Kemble Coal & Iron Co. an unreasonable time, and this act of the plaintiffs indicated an intention to immediately transfer the possession as soon as they reasonably could do and the nature of the property would permit, and if they caused it to be marked with their mark, N, this was sufficient to reasonably indicate the change of ownership, and if the sale was in good faith, the plaintiffs are entitled to recover.

Answer.   What we shall now say to you is the law as you will apply it to these three points; you will take what follows instead of these three points as drawn:—

If the jury find that on the 23d day of July, 1884, the Kemble Coal & Iron Co. was indebted to the plaintiffs, Nimick & Co., in a sum exceeding $200,000 and on that day, in good faith, transferred to Nimick & Co. the iron in dispute, which was then on their docks at the furnace, in payment of a portion of said indebtedness, that a bill of sale was executed and formal delivery made to Nimick & Co. by the secretary and treasurer of said company, that the nature and character of the iron ranked on the docks, and the surrounding circumstances were such that the actual delivery or removal was impracticable or very expensive, that the iron was distinctly marked with the letter N by direction of the plaintiffs, that Nimick & Co. then directed Mr. Kelly to take charge of the iron and ship it to them or upon their order as soon as possible, and in pursuance of that sale and under said orders the said Kelly, the same day, made application to the proper officers of the railroad company to furnish cars, and next day commenced to ship the iron and afterwards both he and Nimick & Co. urged said officers to furnish cars more rapidly, and continued to load the iron upon the cars and ship it as fast as cars were furnished and the nature of the property and the facilities of transportation would permit, and were so engaged in shipping

'[Cessna v. Nimick et al.]

the iron until and when the execution of defendant was levied, then it would not be considered as having been left in the possession of the Kemble Coal & Iron Co. an unreasonable time; and such act, if found by the jury, would indicate an intention to immediately transfer the possession, as soon as they reasonably could and as the circumstances and the nature of the property would permit, and would be sufficient to indicate the change of ownership; and if the sale was for a valuable consideration paid (which the giving of credit by agreement upon an account or debt honestly owing would be) and *bona fide*, that is in good faith, in discharge of the debt and not in secret trust for any benefit or use of the selling party, and not to hinder or delay the creditors of the Kemble Coal & Iron Co., then the verdict should be for the plaintiffs, Nimick & Co.

12. That although it has been held in Pennsylvania that a change of possession is necessary to give validity to a sale of personal property as against creditors, and a retention of possession by the vendor is a fraud in law, the change of possession required by the law is such as the subject matter of the sale is reasonably capable of; if it is capable of immediate removal, it should, as a rule, be at once taken into the actual possession of the purchaser; but if it is large and bulky, it would be sufficient to remove it within a reasonable time thereafter; and what would be a reasonable time would be determined by the usual and ordinary modes of transporting such property; if, therefore, the jury should be of opinion from the evidence that the plaintiffs in this case, after the purchase of the iron in dispute, really intended to take it into their actual possession and proceeded to do so in the ordinary and usual mode of removing such property, and used reasonable and proper diligence in so doing, and were actually engaged in removing it at the time of the defendant's levy, and in the meantime had caused it to be marked with their initial, the verdict should be for the plaintiffs.

Answer: This we affirm if you find that the sale was for a valuable consideration, made in good faith, and not to defraud creditors; and if it was followed up by acts showing an intention to transfer the possession as well as the title and that the plaintiffs, Nimick & Co., assumed such control of the iron on the docks as the nature of the property and the circumstances surrounding it admitted, so as to reasonably indicate a change of ownership.

The defendant presented, *inter alia*, the following points:

4. That it was the duty of the Kemble Co. and of Nimick & Co., if they knew that the Kemble Co. was in insolvent and failing circumstances, to weigh the iron so that other credi-

tors might get their just dues, and that the furnace weight when weigh scales were at hand, so that weighing could have been done properly and at small expense, was a fraud upon creditors in view of the large over-weight of 297½ tons, and renders the alleged sale absolutely void.

Answer :—This point would be the law if, with knowledge on the part of Nimick & Co. of this insolvency, they had bought the iron at an estimated weight, though at a fair value per ton, if so much as 297½ tons of over-weight was afterward found in 2600 tons; but if in good faith, both seller and buyer dealt on the furnace weight as shown by the furnace books at a full market rate per ton and freight added, then by reason of over-weight alone the sale is not void.

4½. If the jury believe from the evidence that John S. Slagle of the firm of Nimick & Co., plaintiffs, on the 23d of July, 1884, knew or had reason to believe that the Kemble Coal & Iron Co. was insolvent, he was bound in the transaction of that day to the highest good faith with respect to the creditors of said company. A .d if they find that with this knowledge he purchased al¹ .e iron in the yard of the company at a certain rate per tᴄ ᵢ, the total tonnage to be determined by the yard book containing entries of the furnace weight without re-weighing said iron, and that said Slagle knew that said furnace weight did not actually determine the real tonnage because of allowance for sandage, and that ordinarily such furnace weight was in excess of the actual weight, and that it was reasonably practicable then and there to re-weigh said iron, and that the iron so bought that day actually exceeded by 297½ tons the amount shown by the yard book and the amount by which the price paid was fixed, they may infer from such facts actual fraud in the transaction of the 23d of July ; and in case they find such actual fraud, then such fraud would not only invalidate the sale as to such excess, but make the whole transaction void as to creditors, and the defendant would be entitled to recover in full.

Answer :—This we affirm on the facts assumed in the point, but we qualify it thus :—But if, when the bargain was made, John S. Slagle, for Nimick & Co., agreed with the Kemble Coal & Iron Co., to buy the iron at the record of furnace weights and in consideration of the fact that usually furnace weights, by reason of allowance made for sandage, will be exceeded by actual weight, agreed to allow the current prices prevailing at Pittsburgh and pay the freight on the iron from Riddlesburg in addition, and the excess was only ascertained after final shipment and after the levy made on the defendant's writ, and the over-weight turned out to be unusually large and unexpected, yet these facts alone, with full knowl-

edge of insolvency, would not warrant a jury in inferring actual fraud.

5. That as a general rule a sale of personal property unaccompanied by a change of the possession at the time of the sale, is void as against creditors; that this is a rule of law for the general public good, and the law regards the sale without a change of possession as fraudulent and utterly void, no matter if it was made in good faith and no actual fraud was intended by the parties.

Answer:—This we affirm.

6. The delivery of property must be actual and not symbolical whenever actual delivery is at all practicable, and if actual delivery be not practicable, the parties should leave nothing undone that can reasonably be done to give the sale publicity.

Answer:—We affirm this.

7. The mere marking of the piles of iron with the letter N on one or two of the pigs in each pile was not sufficient publication of the alleged sale to make it legal and binding on creditors.

Answer:—We say to you that the marking of that iron with the letter N, if that was all that was done, was not a sufficient publication.

9. That the possession taken at the time of the sale must have been an exclusive possession by Nimick & Co., and not a joint and concurrent possession by both parties; and that the alleged possession said to have been taken by Mr. Kelly as an agent of Nimick & Co. was not such exclusive possession as the law requires, if Kelly was a salaried officer and agent of the Kemble Co. and their superintendent at the time.

Answer:—This we affirm as a sound principle of law on the facts which the point assumes. If no more had been done by Slagle than the mere formal delivery and the appointing of Kelly, agent, to hold and ship the iron and the marking of the iron by Kelly with the letter N, through Burns whom he employed, this would not be such a delivery as the law requires. But the jury are required to inquire farther and see what effect the nature and character of the property sold, the shipping of pig-iron, and other circumstances surrounding this case have, as indicated by the general charge and the answers to other points.

Verdict for the plaintiffs and judgment thereon, whereupon the defendant took this writ assigning for error, *inter alia*, the answer of the court to the several points of the plaintiff and of the defendant as above shown.

*John Stewart* and *Wm. M. Hall*, for plaintiff in error.—There

[Cessna *v.* Nimick et al.]

is no principle better or more securely settled in Pennsylvania, than that a transfer of personal property unaccompanied by a corresponding change of possession, is void as against creditors. While in some other states the early doctrine of Twyne's case has been so far relaxed, that a retention of possession by the vendor is there regarded only as a badge of fraud, which can be removed by evidence of the *bona fides* of the transaction, yet in Pennsylvania we still stand in the old paths, and adhere to those principles which experience has shown to be most conducive to honesty among men.    With us, retention of possession by the vendor, when the property is susceptible of actual delivery, is not simply a badge of fraud, but is fraud in law : Clow et al. *v.* Woods, 5 S & R., 275 ; Streeper *v.* Eckert *et al.*, 2 Wharton, 302 ; Stark *v.* Ward, 3 Barr, 328 ; Cadbury *v.* Nolan, 5 Barr, 320 ; Billingsby *v.* White, 59 Pa. St., 464 ; Dewart *v.* Clement, 48 Pa. St., 413 ; Steelwagon *v.* Jeffries, 44 Pa. St., 407 ; McKibben *v.* Martin, 64 Id., 352 ; Trunick *v.* Smith, 63 Id., 18 ; Chase *v.* Ralston, 30 Id., 539 ; Garman *v.* Cooper, 72 Id., 32 ; Long *v.* McClure, 2 W. & S., 147.

In Crawford *v.* Davis, 3 Out., 579, it is said that "a change of location of property is not essentially necessary" and the same thing is repeated in McClure *v.* Forney, 11 Id., 416. We do not contend that it is in all cases, nor do we understand this as any departure from the law as heretofore settled. But when and in what cases is the change of location dispensed with ?  Certainly not simply at the pleasure of the parties, otherwise the rule requiring a delivery of the possession is made meaningless, and we have drifted as far as the farthest from the earlier doctrine.  We fail to see a single circumstance to excuse the want of an actual delivery in the case except the necessary inconvenience to the parties.  When this comes to be regarded as sufficient, the general rule will have been entirely abrogated.  We have not reached that point yet.

There is an entire absence from the case as made out by the plaintiffs, of all those considerations which are held to excuse or dispense with a change of location.   It was not as in Forsyth *v.* Matthews, 2 Harris, 100, a sale of a stock of goods and business, which could not have been removed without defeating the honest intentions of the parties ; nor as in Hugus *v.* Robinson, 12 Harris, a sale of a drug store, where a change would have been equally serious ; nor, as in Dunlap *v.* Bournonville, 2 Casey, 72, a sale of a coachmaker's establishment ; nor as in McKibben *v.* Martin, *supra*, a sale of the equipment of a great hotel, which it would have been ruinous to remove ; nor as in Evans *v.* Scott, 8 Norris, 136, a sale of the furniture or carpets in a dwelling between brothers who were in joint occu-

pancy and who intend to use the property as before; nor as in Pearson v. Carter, 13 Norris, 156, the sale of farming utensils or stock by a landlord to a tenant who bought to use them as before; nor, as in Crawford v. Davis, *supra*, a sale of property on a farm by an old man to his son, when if an actual change of location had been required, the sale would never have been made; nor, as in McClure v. Forney, *supra*, a sale of a mare by a father to a daughter.

It was the duty of the court to declare, as a matter of law, that the sale was invalid as against the execution creditor: Domick v. Reichenbach, 10 S. & R., 84; McKibben v. Martin, 64 Pa. St., 352; Chase v. Ralston, 30 Id., 539; Steele v. Miller, 3 Eastern Reporter, 318; Rafferty v. McKenna, 1 Central Reporter, 642. The court should have unqualifiedly affirmed the defendant's point No. 4½: Allegheny R. R. Co. v. Steele, 11 W. N. C., 112; Culvert v. Good, 95 Pa. St., 68; Egbert v. Payne, 1 Penny., 358; Stouffer v. Latsham, 2 Watts, 165.

*John Reynolds* and *J. F. Slagle*, for defendants in error.— The question of actual fraud was left to the jury. The knowledge of the insolvency of the Kemble Company on part of Nimick & Co. was of no consequence: Fuller v. Banking Co., 2 Eastern Reporter, 597; Cavenhaven v. Hart, 21 Pa. St., 495.

That retention of possession is a fraud in law whenever the subject of the transfer was capable of delivery, and no honest and fair reason could be assigned for the vendor not giving up and the vendee taking possession, is the doctrine of this court in McKibben v. Martin, 64 Penn., 352. With this law as cited by the plaintiff in error we are content and ready to rest the ruling of this case.

The plaintiff in error says that it is of no concern whether we could not ship this iron by cars as rapidly as we desired. That we could have removed it otherwise from the premises of the vendor. This is absurd. The law does not require the performance of idle and useless ceremonies, as was said in Adams Express Co. v. Lyons, 7 W. N. C., 421. This court said in Hugus v. Robinson, 12 Harris, 13: "If the circumstances of the sale and delivery be in accordance with those that usually and naturally accompany such a transaction it cannot be declared a legal fraud." See also Crawford v. Davis, 3 Out., 578; Barr v. Ritz, 3 P. F. S., 256.

We submit that the possession taken by the vendees in this case, the immediate and continued shipment on account of Nimick & Co. (and not as the iron of the Kemble Coal and Iron Co., as erroneously stated), and the other facts and circumstances in evidence would in law be a good delivery of

3 AMERMAN—6

[*Cessna v.* Nimick et al.]

the species of property—as held not only in the cases cited before, but in the following: Haynes *v.* Hunsicker, 2 Casey, 61; Chase *v.* Ralston, 6 Id., 539; Herron *v.* Frey, 2 Penn., 269. And in the following cases where it is held that a reasonable time after sale is allowed for delivery, and a sale may be good against a levy, even without delivery where such reasonable time has not expired: Hughes *v.* Robinson, 12 Harris, 12; Smith *v.* Stern, 5 Id., 360; Carpenter *v.* Meyer, 5 Wr., 483. Where the transfer of possession corresponds with the sale and the nature of the property sold and the relation of the parties, the sale will be valid unless fraudulent in fact: Dunlap *v.* Brownsville, 2 Casey, 72; Billingsby *v.* White, 9 P. F. S., 464; Smith *v.* Crisman, 10 Norris, 431.

The opinion of the Court was delivered May 24th, 1886.

PER CURIAM. The question as to what acts are necessary, on the sale of a chattel, to constitute a valid delivery as against third persons, has been frequently considered. It is now well settled that a change of the location of the property is not in all cases essentially necessary. Due regard must be had to the character of the property, the nature of the transaction, the position of the parties and the intended use of the property. If the purchase be in good faith and for a valuable consideration, followed by acts intended to transfer the possession as well as the title, and the vendee assumes such control of the property as to reasonably indicate a change of ownership, the delivery of possession, as matter of law, cannot be declared insufficient: Haynes *v.* Hunsicker, 26 Pa. St., 58; Chase *v.* Ralston, 30 Id., 539; Billingsley *v.* White, 59 Id., 464. No such change of possession as will defeat the fair and honest purpose of the parties is required: Crawford *v.* Davis, 99 Pa. St., 576. Applying this rule of law to the facts of the case, it is clear the learned judge correctly held the sale was not fraudulent in law. The quantity of iron, the intended market therefor, and the practical manner of shipping the same, the promptness with which it was commenced, as well as the marking of the initial of the purchaser's name thereon, are sufficient to bring the case within the rule stated. The transaction was open and public. All questions relating to whether there was any fraud in fact, were well submitted to the jury.

We see no error to correct.

Judgment affirmed.