# Ayers et al. v. McCandless, Appellant.

*Delivery of chattel.*

A change of location is not in all cases necessary to constitute a valid · delivery of a chattel, as against creditors of the vendor. Due regard must be had to the character of the property, the nature of the transaction, the position of the parties, and the intended use of the property: Cessna v. Nimick, 113 Pa. 70.

*Evidence of delivery—Execution.*

In the circumstances of this case, the thing sold being a lot of lumber, piled separately, with the vendee's name marked on each pile in such manner as to be visible to one examining the lumber as an intending purchaser, and to indicate its ownership by the vendee, was sufficient as against an execution levied a week later.

Argued Nov. 5, 1891. Appeal, No. 298, Oct. T., 1891, by defendant, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1889, No. 235, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Trespass by E. R. Ayers and H. E. Dewey, trading as E. R. Ayers & Co., against Alexander Æ. McCandless, for seizing and selling, under a writ of execution against H. Bauer & Bro., directed to the defendant as sheriff of Allegheny county, certain lumber alleged to be the property of the plaintiffs. Issue.

At the trial on March 11, 1891, it was shown that Bauer & Brother owned a planing mill in the borough of Millvale, Allegheny county. In April, 1889, they ordered of the plaintiffs, lumber dealers doing business at East Saginaw, Michigan, two car loads of lumber. The lumber was shipped in accordance with the order, and after receiving it, Bauer & Brother sent the plaintiffs a note for the amount due upon it. On May 4, 1889, having learned that a judgment had been entered up against Bauer & Brother in favor of H. W. Ahlers & Co., one of the plaintiffs came to Pittsburgh, and in company with W. C. Hagan, the plaintiffs' agent, went to the mill of Bauer & Brother, and had a conference with Henry Bauer, a member of that firm.

Testimony for the plaintiffs tended to show that, in response to a demand that the price of the lumber be paid or secured, Mr. Bauer acknowledged the inability of his firm to do either, and proposed to surrender the lumber to the plaintiffs, and this

proposal was accepted, whereupon Bauer & Brother executed the following writing indorsed on the invoice of the lumber: " The within bill of lumber is now piled in our yard, and mill, and we hereby return the same to E. R. Ayers & Co., and we deliver up possession of said lumber to them, and agree to hold for them in our yard and mill, subject to their order."

The note given for the price of the lumber was then delivered up to Mr. Bauer, and the lumber was marked by scraping the edges of some of the boards and writing on them with a carpenter's pencil the name of the plaintiff firm, each pile being marked in this way in from three to five places.   Hagan testified for the plaintiffs, that the mark placed on the lumber was " E. R. Ayers & Co."   Another witness, who subsequently saw the lumber, testified that the lumber piled in the mill-yard was " marked on the face of the pile as belonging to E. R. Ayers & Co., and the pile in the mill . . . . as the property of E. R. Ayers & Co."

Testimony for the defendant tended to show that the arrangement, verbally made on May 4th between the plaintiffs and Bauer & Brother, was to the effect that the lumber was resold to the plaintiffs, but if everything would go right, it should remain there ; otherwise not.   This was contradicted by the plaintiffs' witness, Hagan, upon his cross-examination, the witness stating that what was said was that Bauer & Brother could have the lumber at any time on paying cash or giving security to the plaintiffs, but the understanding was that if the plaintiffs found a customer, they were to sell it at once, and it was to be kept at the mill only until they found a purchaser for it.

On May 11, 1889, the defendant levied on the lumber as the property of H. Bauer & Brother, at their mill.   The deputy sheriff, who executed the writ, testified that when he made the levy he saw no marks on the lumber indicating that it belonged to any one else than Bauer & Brother; that he looked at it as he generally did when making a levy, walking around among the piles, but did not examine them strictly for marks or anything of that kind; that the lumber might have been marked with a lead pencil, but if so, was not marked very plainly, and there was nothing on it that would draw the attention of a man looking at the piles, unless he would look very closely.

On May 13, 1889, Frank Kline, who had been employed by the plaintiffs to sell the lumber for them, succeeded in effecting a sale of it in two lots, one to the Pittsburgh Lumber Co. and the other to George D. Dubarry & Co., and deliveries were made, in pursuance of these sales, by wagons, on May 14th, 15th and 16th. The sheriff followed up and retook the lumber, and it was sold by him on June 5, 1889.

STOWE, P. J., charged the jury in part as follow:

The first question in this case is, What arrangement was made at the time the property is said to have been sold? It was sold, according to the testimony of the plaintiffs, and they stand, so far as the legal rights are concerned, just as if they had been entire strangers to the previous transaction. They had sold the lumber to H. Bauer & Brother. They became apparently—actually, as it turned out—embarrassed, and judgment was entered against them. The plaintiffs had taken a note for this property. Now they had a right to go to Bauer & Brother and buy this property back; that is to say, give back the note and take possession of the property; just as they had a right to go there and buy it for cash, if they had so chosen. . . .

But the defendant says, that was not the arrangement at all; and that the evidence shows that Bauer & Brother, having bought this property, having it in their possession on their premises, the plaintiffs or their agent went there, and the defendant says, or at least the substance of his story is, that there was no absolute resale of the property, or arrangement by which the ownership of it was to be revested in Ayers & Co.; but that it was a sort of conditional arrangement by which it was to be held as collateral security, or in such shape that if Bauer & Brother got out of their trouble, it was to belong to them, but if they did not, it was to belong to Ayers & Company. If that was the transaction, it was one that the law does not recognize in a case of this kind. It would be absolutely void as against execution creditors. . . . But if you take the other view, the question arises whether or not there was a sufficient delivery in law to vest the title to this property as against creditors.

The question as to what acts are necessary to constitute a delivery has been frequently considered. Over seventy-five

years since, the Supreme Court of this state in passing upon questions of this kind said, and it is now well settled, that a change of location of the property is not in all cases essentially necessary. Due regard must be had to the character of the property, the nature of the transaction, the position of the parties and intended use of the property. If the purchase be in good faith and for a valuable consideration,—as this was, if it was purchased at all, as claimed by the plaintiffs,—followed by acts intended to transfer the possession as well as the title, and the vendee assumed such control of the property as to reasonably indicate the change of ownership, the delivery of possession, as a matter of law, cannot be declared insufficient.

In saying that, we do not undertake to say as a matter of law, because we cannot so say, that even supposing you believe the testimony of the plaintiffs as to the delivery, that that constitutes an absolutely sufficient delivery, because there is no rule of law by which we can say how large a sign, or letters, or marking should be. Of course we could very readily say that the mere marking might be done in such a way as to be an absurdity. To take a lead pencil and make a mark so that a man probably couldn't see it without a spyglass, would not indicate anything to anybody, even if he was going to purchase it. [But, if it was made sufficiently large to be visible to anybody examining the lumber for the purpose of buying it, and to indicate that it belonged to somebody else than the owner of the yard, that would be sufficient.] [2] Whether the marking was done with sufficient distinctness is a matter of fact for the jury, not a matter of law for the court.

[The testimony is, that it was marked with a carpenter's pencil on the edge of the boards. "This is the property of Ayers & Co.," and marked in a number of places. One could make very distinct marks there, that would attract the attention of anybody who was examining the lumber; not, perhaps, the sheriff, who would levy on ten or a dozen or fifteen piles at once, without examining them.] [4] It was none of his concern, and he would not be expected to examine them. . . . These are matters for you, gentlemen. We can only say what the law is. If this was an actual, bona-fide sale, intended to retransfer the title as claimed by the plaintiffs, to Ayers & Co., the plaintiffs are entitled to your verdict, if the evidence

indicates to you that these boards were sufficiently and distinctly marked, so as to indicate to anybody examining them that they belonged to Ayers & Co. . . .

The defendant requests the court to charge:

1. In order to render the sale of lumber, alleged by the plaintiffs, valid, as against creditors of Bauer & Brother, it was necessary that there should be such open, notorious and visible change of possession as would be apparent to the public; and it appearing from the evidence of the plaintiffs that all that was done to indicate a change of ownership was the marking of the name " Ayers & Co.," with a carpenter's pencil, on the edges of some of the boards, this would not be sufficient, and the verdict should therefore be for defendant. Answer: Refused. [1]

Verdict and judgment for plaintiffs for $647.50. Defendant appealed.

*Errors assigned* were (1) the refusal of defendant's point; (2, 4) the part of the charge embraced in brackets; (3) that the charge as a whole tended to create the impression that all that was required was that the lumber should be so marked that a person going into the lumber yard and making a close and careful examination, could see the marks.

*R. B. Petty*, with him *G. D. Packer*, for the appellant, cited: Haynes v. Hunsicker, 26 Pa. 58; Long v. Knapp, 54 Pa. 514; Cadbury v. Nolen, 5 Pa. 320; Chase v. Ralston, 30 Pa. 539; Cessna v. Nimick, 113 Pa. 70; Stephens v. Gifford, 137 Pa. 219; Clow v. Woods, 5 S. & R. 275.

*R. E. Stewart*, for the appellees, cited: Cessna v. Nimick, 113 Pa. 70; Chase v. Garrett, 1 Cent. R. 331; Long v. Knapp, 54 Pa. 514.

Per Curiam, January 4, 1892.

We are of opinion that the change of possession of the lumber in controversy was all that was reasonably necessary and practicable, under the circumstances.

The plaintiffs are wholesale dealers in lumber, with their place of business at East Saginaw, in the state of Michigan. The two carloads of lumber in question were sold and shipped by them to H. Bauer & Brother, of Millvale, Allegheny county. Bauer & Brother, being unable to pay for the lumber accord-

ing to the contract with the plaintiffs, the latter came on to Millvale, and after an interview with Bauer & Brother, the contract of sale was canceled, and the lumber redelivered to plaintiffs. In pursuance of this arrangement, Bauer & Brother executed and delivered to the plaintiffs the following paper: " The within bill of lumber is now piled in our yard, and mill, and we hereby return the same to E. R. Ayers & Co., and we deliver up possession of the said lumber to them, and agree to hold for them in our yard and mill, subject to their order." Each pile of said lumber was then marked "E. R. Ayers & Co."

There was some confusion as to whether it was marked " E. R. Ayers & Co.," or " Ayers & Co.," or " This is the property of Ayers & Co.; " but we do not consider this as material, as either mark would have been sufficient to indicate that the lumber belonged to the plaintiffs. After the lumber had thus been retransferred to them and marked as before stated, the plaintiffs returned to their place of business in Michigan, having first arranged with a Mr. Kline to resell it for them.

Were the plaintiffs bound to do more than this? It would be unreasonable to hold that they must re-ship the lumber back to Michigan. They had no place of business in Pittsburgh to which they could order it to be removed. Besides, lumber is a heavy article, and its removal from one place to another is attended with considerable expense. The plaintiffs did all that could reasonably be expected of them, in having it piled separately and the piles marked with the name of their firm. This is in harmony with our cases upon this subject. In Cessna v. Nimick, 113 Pa. 70, it was held that "a change of the location is not in all cases necessary to constitute a valid delivery of a chattel as against creditors. Due regard must be had to the character of the property, the nature of the transaction, the position of the parties, and the intended use of the property."

Judgment affirmed.                                        C.