## Steelwagon *versus* Jeffries and Wife.

*Sale of Personal Property, when valid as against Creditors.—Delivery must be Actual and Possession Exclusive.*

1. To constitute a valid sale of personal chattels, as against the creditors of a vendor, the delivery of possession must be actual, if possible, or if the nature and bulk of the articles preclude, it must be constructive.

2. A father, residing with his daughter and son-in-law, received from the latter, then in failing circumstances, a bill of sale of the household furniture, and a few months after assigned it to his daughter, all the parties continuing to live together, with no change of possession other than that the name of the son-in-law was taken from the door. On an interpleader issue between an execution-creditor of the husband, and the wife, it was *held*,

That as there had been no actual delivery and change of possession of the property, and no exclusive possession of it in the vendee, the sale was a legal fraud upon creditors, and invalid as against them.

ERROR to the District Court of *Philadelphia.*

This was a feigned issue under the Sheriff's Interpleader Act, in which Robert N. Jeffries and Emily his wife, in right of said Emily, were plaintiffs, and Joseph Steelwagon, defendant.

Steelwagon held a judgment against Robert N. Jeffries, on which he sued out an execution, and levied on certain goods and chattels in a dwelling-house on the corner of Broad and Berks streets, then occupied by Jeffries with his family. The articles levied on being claimed by Mrs. Jeffries, a feigned issue was directed, as above stated, to try her title thereto.

On the trial the following facts were proved by the plaintiffs:—
Prior to January 26th 1861, R. N. Jeffries was indebted to Joseph Chew (the father of Mrs. Jeffries), in the sum of $6000, for money theretofore loaned, for which he held his bond, dated in 1857; that prior to that date R. N. Jeffries owned the furniture in question, and that he occupied the dwelling-house at the northeast corner of Broad and Berks streets, as a tenant of Joseph Chew, at the rent of $400 per annum; that Joseph Chew boarded with him at the rate of $4 per week, which amount was to be deducted from the rent; and that upon the 26th of January 1861, R. N. Jeffries being in failing circumstances, executed to Joseph Chew the following bill of sale of said furniture:—

"Know all men by these presents: That I, Robert N. Jeffries, of city of Philadelphia, state of Pennsylvania, for and in consideration of the sum of $1500, to me in hand well and truly paid by Joseph Chew, Sr., of the city of Philadelphia, state of Pennsylvania, at and before the sealing and delivering of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, and delivered, and by these presents do grant, bargain, sell, and deliver unto the said Joseph Chew, Sr., all and singular the household and kitchen furniture, and

[Steelwagon *v.* Jeffries and Wife.]

all other articles generally used in housekeeping, now remaining and being in the dwelling-house that I reside in, at the north-east corner of Broad and Berks streets, immediately opposite to the Monument Cemetery, in the Twenty-first Ward of the city of Philadelphia, mentioned and set forth in the schedule hereunto annexed, and marked with the letter 'A,' to have and to hold all and singular the said goods and chattels unto the said Joseph Chew, Sr., his heirs, executors, administrators, and assigns, to and for his own proper use and benefit for ever. And the said Robert N. Jeffries, his heirs, executors, administrators, and assigns, from and against all persons whomsoever, shall and will warrant and for ever defend by these presents.

"In witness whereof, I have hereunto set my hand and seal, this 26th day of January, A. D. 1861.

"R. N. JEFFRIES.　[SEAL.]

"Signed, sealed, and delivered
　　　in presence of J. H. P.—J. S. B."

That Joseph Chew gave Mr. Jeffries credit for the $1500 on account of his bond for $6000 in a book which he kept; that the bill of sale was executed by Mr. Jeffries at his office, in the absence of Mr. Chew, and delivered by Mr. Jeffries to Mr. Chew at his house the next day; that upon the execution of the bill of sale, Mr. Jeffries gave up the tenancy of the house, and his name was taken down from the door; that before the sale Mr. Chew *considered* that he occupied the house as a boarder; that since the sale Mr. Jeffries and his wife have continued to reside in the house; and that since then Mr. Chew considered that they lived with him. After the sale Mrs. Jeffries sometimes kept the house, and sometimes Mr. Chew kept it. Since the sale Mr. Chew considered that he had taken the responsibility of keeping the house. After the 2d of July 1861, Mr. Chew made a gift of the furniture to Mrs. Jeffries by the following writing, under his hand and seal:—

"Know all men by these presents: That I, Joseph Chew, of the city of Philadelphia, state of Pennsylvania, for and in con-sideration of the paternal love and affection which I bear unto my daughter, Mrs. Emily Jeffries, the wife of Robert N. Jeffries, of the city of Philadelphia, and for her better preferment in marriage; and also in consideration of the sum of one dollar to me in hand paid by the said Emily Jeffries, at and before the ensealing and delivering hereof, the receipt whereof is hereby acknowledged, have given, granted, bargained, and sold, and by these presents do give, grant, bargain, and sell unto my said daughter, Emily Jeffries, all and singular those goods and chat-tels mentioned and expressed in the writing hereunto annexed, marked 'A,' being the same goods and chattels which are now

[Steelwagon *v.* Jeffries and Wife.]

contained in the dwelling-house at the north-east corner of Broad
and Berks streets, in the city of Philadelphia, and which I pur-
chased on the 26th day of January, A. D. 1861, from the said
Robert N. Jeffries, for the sum of $1500, to have and to hold
all and singular the goods and chattels hereby given and granted
to the said Emily Jeffries, her heirs, executors, administrators,
or assigns for ever, as her and their own proper goods and chat-
tels, to and for her and their own proper use and behoof.

"In witness thereof, I have hereunto set my hand and seal,
this 30th day of July, A. D. 1861.

"J. CHEW.　[SEAL.]

"Signed, sealed, and delivered in presence of W. D."

The defendant demurred to the whole of the above evidence,
whereupon the court directed the entry of judgment for plaintiffs;
which was the error assigned here by the defendant.

*James Lynd*, for plaintiffs in error, argued that there was no
evidence of change of possession and none in fact. No person
called in to witness the delivery of the furniture, and, beside this,
there is a badge of legal fraud in the circumstances of the parties
and the privacy of the transaction;—citing, as to the possession
which must accompany all sales of personal property, or, within a
reasonable time, follow the sale: Clow *v.* Woods, 5 S. & R. 277;
Stark *v.* Ward, 3 Barr 328; McVickar *v.* May, 3 Id. 225. That
the change of possession must be open and visible: Hoffner *v.*
Clark, 5 Wh. 545; Dunlap *v.* Bournonville, 2 Casey 74; Haynes
*v.* Hunsicker, 2 Id. 60; Chase *v.* Ralston, 6 Id. 541. That the
possession must be and remain exclusively in the vendee, and that
concurrent possession is fatal: Babb *v.* Clemson, 10 S. & R. 423;
Cadbury *v.* Nolen, 5 Barr 320; Streeper *v.* Eckhart, 2 Wh. 306;
Young *v.* McClure, 2 W. & S. 147. That the sufficiency of the
change of possession is a question of law, and, the facts being
undisputed, is therefore to be decided by the court: Cadbury *v.*
Nolen, 5 Barr 326; Babb *v.* Clemson, 10 S. & R. 423; Repner
*v.* Burkhart, 5 Barr 478; Young *v.* McClure, 2 W. & S. 151;
Milne *v.* Henry, 4 Wright 357.

*J. Cooke Longstreth* and *J. G. Brincklé*, for defendant.—A
demurrer to evidence must admit the truth of all facts which the
jury might find in favour of the other party on the evidence laid
before them, whatever the nature of that evidence may be,
whether of record, in writing, or by parol: 2 Phillips on Ev.,
Am. ed., 1859, p. 1008. See also U. S. Bank *v.* Smith, 11
Wheat. 180; Dickey *v.* Schneider, 3 S. & R. 413; Fowle *v.* Alexan-
dria, 11 Wheat. 323. The party demurring here cannot therefore
go outside the facts expressly admitted by him to bolster up his

[Steelwagon *v.* Jeffries and Wife.]

case, by attacking the consideration of the second bill of sale, on the strength of a supposed fact not found or admitted.

The sole question is this—Is delivery of the possession of the premises in which goods are, accompanied by a bill of sale of such goods, sufficient delivery of the possession of those goods? The consideration for the sale is admitted to have been a valuable one, and to have actually passed. The change of tenancy of the house is admitted, and the relation in which the vendor remained in the house, after the sale, is found beyond doubt by the expression of Mr. Chew's understanding of that relation. After Jeffries had given up the tenancy of the house, Chew might have turned him out of doors without any legal process at any time. He chose to let him remain, and the relation in which he remained was not doubtful or uncertain. He was not tenant at will of the premises, for he had given them up to their owner, and taken down the outward badge of his possession—his name on the doorplate; but was simply a member for the time being of his father-in-law's family. At no time after this, had Mr. Jeffries any control, nor did he pretend to have any, either over the premises, the furniture, the household arrangements, or the keeping of the house. 1. Upon the question of the validity of the sale from Jeffries to Chew, the bill of sale made by the latter nearly six months afterwards to Mrs. Jeffries, has no bearing, for if the property was his, he had as much right to give it to his daughter as to a stranger. 2. The change of possession was sufficient to take the case out of the statute of 13 Eliz. The reason of the rule in Twyne's Case, and in Clow *v.* Woods, 5 S. & R. 288, that the vendor continuing in possession may obtain credit on the faith that he is still the owner of the goods, applies with force to a stock of goods in a store, but not by any means with the same effect to household furniture, timber lying in the woods, or growing crops; and hence, when questions concerning property of the latter classes have arisen, the courts have held that if the change of possession corresponds with the nature of the thing sold, it is sufficient: Chase *v.* Ralston, 6 Casey 541. The intention of the parties becomes in cases of transfers between persons standing in near relations of business or affinity, an important element in determining whether there has or has not been a sufficient change of possession: Dunlap *v.* Bournonville, 2 Casey 74; Hugus *v.* Robinson, 12 Harris 13; 3 State Rep. 224; 6 Watts 247. In Clow *v.* Woods, and Stark *v.* Ward, Milne *v.* Henry, Cadbury *v.* Nolen, Babb *v.* Clemson, Hoffner *v.* Clark, cited by plaintiff in error, there was no change of possession either actual or constructive. In Haynes *v.* Hunsicker and Chase *v.* Ralston, a marking of the lumber was held sufficient evidence of a change of possession. In Streeper *v.* Eckart, Young *v.* McClure, the badge of fraud consisted in the possession,

[Steelwagon *v.* Jeffries and Wife.]

if delivered at all, not continuing in the vendee, but reinstated by his act in the vendor. Kepner *v.* Burkhardt was an action of ejectment, and turned upon the validity of a sale of land, in which of course the element of change of possession had no place. In our case there was a change of possession as clearly marked as by the changing of the signs in McVicar *v.* May and Dunlap *v.* Bournonville, and much more clearly marked than in Hugus *v.* Robinson, where the signs were not changed, and in Graham *v.* McCreary, 4 Wright 515, where the vendor absented himself for a few weeks and then returned, and had thereafter the same use of the property as before. The possession of vendee here was exclusive in every fair sense of the word. He allowed vendor to sit in the chairs, to eat off the tables, to lie on the beds, as matter of grace but not of right. The change of possession may even be said to have been notorious (although that is not necessary), for immediately on the sale, vendee took down vendor's sign, the door-plate with his name on it, an act much more likely to give Steelwagon notice of change of possession than the most formal delivery inside of the house, in the presence of a servant, relative, or stranger.

The opinion of the court was delivered, March 16th 1863, by

Thompson, J.—If the plaintiff in error is entitled to a reversal of the judgment of the court below, it is because the court erred in finding, or inferring from the testimony given and demurred to by the defendant, that there was not only a sale of the property by Jeffries to Chew, but an actual delivery and change of the possession.

The transfer of the household furniture by Jeffries to his father-in-law, rested alone in the bill of sale. No actual delivery ever took place. True, the door-plate of the house, having on it Jeffries' name, was taken down, and it is claimed that this was evidence from which a delivery of the contents of the house might be inferred, because the tenancy might be inferred as having been given up. Granted that the termination of the tenancy might be inferred from this circumstance, the household furniture could hardly be supposed to pass to the landlord. The term passed by the surrender : surely nothing could be presumed to have passed excepting such as ought to pass in the same way. But the furniture was not leased, and the surrender of the tenancy therefore could not include it.

There was nothing else from which to draw the conclusion of actual delivery and change of possession of the property. All the parties to the transaction lived together after, as they did before, the sale. That Mr. Chew *considered*, after it, that Jeffries and wife lived with him, although he " considered" that he lived

[Steelwagon *v.* Jeffries and Wife.]

with them before, worked no actual change of the possession. Visibly it was the same after, that it was before.

Although the parties very properly thought that an actual change of possession of the property described in the bill of sale was necessary, and endeavoured to make it out, yet they did not succeed in doing it. It was perhaps inconvenient to do so, and hence they took the risk of the law, as to the necessity of an actual delivery and exclusive possession by the vendee, and I fear they must abide the loss in so doing.

Why is not the transfer of household property to be actual and exclusive, like that of any other personal property? It is as capable of manual occupancy and removal as almost any other kind. If the sale be actual, it usually is removed; if it be only for the purpose of securing it against creditors, why shall it not stand on the same platform with other property, capable of delivery and change of possession? In the case of Chase *v.* Ralston, 6 Casey 541, marking saw-logs in the woods with the name of the vendee, was held sufficient evidence of delivery, because they were not strictly capable of manual delivery. Of the same nature was the property in Haynes *v.* Hunsicker, 2 Casey 58. It was lumber· at a mill. The transfer of possession in these cases was all that could reasonably accompany the sale, on account of the nature of the property. In Chase *v.* Ralston, most of the cases in this state were noticed, and the rule to be deduced from them seems almost without the semblance of exception to be, that on a private sale of personal chattels, "if possible the delivery must be actual; but if the nature and bulk of the article preclude this, then it must be constructive, a better term, I think, than symbolical, borrowed from the ancient ceremony of feudal investiture." Dunlap *v.* Bournonville, 2 Casey 72, stands on the very outer verge of settled principles; but on its facts still I think is within them. There was a sale to a brother, who, although he had been about the coachmaker-shop, and did the financiering, "after the transfer he took possession, changed the sign to his own name, procured a new book-keeper, and opened a new set of books." Now, although the brother's vendors were employed in the shop after the sale as foremen, by the week, yet this was held not to be a circumstance to control the visible and actual marks of ownership presented by the change of the sign, of clerk, and the actual active management of the vendee. This was an immeasurably stronger *indicia* of ownership than anything in the case in hand. If there be any remark in that case going farther than this, it was by way of illustration, doubtless; for it certainly cannot be fairly understood to mean that an actual change of possession, when it can take place, or something equivalent, shall not be shown to make the transfer of chattels good as against creditors of the vendor. The recent

cases of Milne v. Henry, 4 Wright 357, and Graham v. Mc-Creary, Id. 515, have their foundations solely in this doctrine.

We cannot infer, from the evidence in this case, an actual delivery and exclusive possession in the vendee of the property in question. It was capable of such change, and as against creditors did not pass without it. However honest in conscience the transaction may have been between the parties, it was against the policy of the law, and a legal fraud against creditors, of whom the vendor had so many at the time of making the bill of sale as to be in "failing circumstances." We think, therefore, the court erred in entering judgment for the plaintiff in the interpleader, and that it should have been for the defendant.

> And now, to wit, March 14th 1863, after argument by counsel, and consideration by the court, it is ordered and adjudged that the judgment of the District Court in this case be reversed, and that judgment be entered for the defendant in the issue on the demurrer by him to the evidence, and that he do recover his costs.

Per Curiam.