# Smith *versus* Crisman.

1. Nothing is better settled in this state than that the purchaser of personal property at sheriff's or constable's sale may leave it in the possession of the defendant as whose property it was sold under any lawful contract of bailment.

2. Upon a sale of personal property only such delivery is required as the nature of the property is susceptible of.

3. As a general rule there cannot be concurrent possession of the vendor and vendee of a chattel which is susceptible of actual delivery.

4. McKibbin *v.* Martin, 14 P. F. Smith 352, and Clow *v.* Woods, 5 S. & R. 275, followed.

October 23d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Jefferson county :* Of October and November Term 1879, No. 272.

Trespass *vi et armis* by George Smith against F. Crisman.

O. L. Wolf, being embarrassed, on the 9th day of February, 1872, his real estate was sold by the sheriff of Jefferson county, and purchased by John Wilson, of Pittsburgh, all of his personal property having been sold prior to that date, which real estate was subsequently sold by said Wilson to George Smith, O. L. Wolf and family remaining on the land and farming, &c., without lease, at the will of and under the instructions of Smith, the owner. Smith subsequently became the owner of certain personal property, to wit: one cow, four hogs, two pair bob sleds, one saddle, one set of harness, &c. ; also, one hemlock raft. On the 22d day of October 1877, F. Crisman, sheriff of Jefferson county, by virtue of a writ of fi. fa., sold said articles as the property of O. L. Wolf, and for which this action of trespass was brought by Smith against Crisman.

It appeared that Wolf being indebted to one Martin, in order to pay him agreed to take out a raft for Martin, Smith becoming security for Wolf. The timber was taken out and Martin's mark placed thereon and it was hauled to and rafted in a certain dam, when Martin refused to take the raft and proceeded to collect from Smith the amount due from Wolf. Wolf then asked Smith to take the raft, which the latter agreed to do, and had his own name marked thereon, and ran it to the mouth of Canoe creek, where it was frozen up and laid until the following spring. Smith then employed Wolf to run the raft down the river to Perryville, where it was tied up until October, when it was sold by Crisman, as set forth above.

[Smith *v.* Crisman.]

At the trial, the plaintiff submitted the following points, all of which the court refused:—

1. That upon sale of personal property only such delivery is required as the nature of the property is susceptible of.

2. That if the jury believe that George Smith took the raft for a debt due by Wolf to Martin, upon which Smith was bail, and had paid, or was to pay, and return the overplus, if any, to Wolf, after payment of the amount due Martin and expenses, and in pursuance of such an arrangement, had his name marked on the raft, put his cable on the raft, furnished the money for running the same, and paid the hands, he is entitled to recover.

3. That possession of personal property is not absolute evidence of title. Personal property may be sold and delivered, and the possession be joint; it is a matter of fact for the jury, from the evidence, to say who is the owner of the property.

The defendant submitted the following points, to which are appended the answers of the court:—

1. That under the evidence in this case, there was no such delivery of possession, and retention of the same, by George Smith, the plaintiff, as would be sufficient to constitute a valid sale, as to creditors, and the alleged sale to Smith was a fraud in law, regardless of the intent of the parties, and the verdict of the jury should be for the defendant.

Ans. " Affirmed."

2. That under the evidence in this case the verdict of the jury should be for the defendant.

Ans. " Under the law of the case it is our duty to instruct you that the plaintiff cannot recover in this action."

Verdict for defendant accordingly, when plaintiff took this writ, and alleged that the court erred in the answers to the above points, and in taking the case from the jury, as there was such testimony as to the ownership and possession of the property as should have been left to the jury.

*Hastings & Brewer*, *A. J. Monks* and *White & Scott*, for plaintiff in error.—The subject of a sale is not always capable of an actual delivery and then a constructive delivery will be sufficient, and in such cases it is only necessary that the vendee should assume control of the subject so as to reasonably indicate the change of ownership: McKibbin *v.* Martin, 14 P. F. Smith 352. Whether on a sale of personal property there is such a delivery and change of possession as the nature of the property is capable of, is properly left to the jury as a question of fact: Chase *v.* Ralston, 6 Casey 539 ; Forsyth *v.* Matthews, 2 Harris 100 ; Loucheim Bros. *v.* Henszey, 27 P. F. Smith 308 ; Ehrisman *v.* Roberts, 18 Id. 308.

*A. L. Gordon*, for defendant in error.—There never was a sale or delivery of possession.

[Smith *v.* Crisman.]

Chief Justice SHARSWOOD delivered the opinion of the court, November 3d 1879.

Upon a careful examination of the confused mass of testimony in this case, we are of opinion that the learned judge committed an error in taking it from the jury. There were questions of fact which it was their province to decide.

They might reasonably have inferred from the testimony that O. L. Wolf had been sold out by the sheriff, both his real and personal estate, that George Smith became the purchaser, either directly from the sheriff or from the sheriff's vendee. That Wolf remained in possession, either as tenant at will or simply by the permission of Smith, of the farm and of the few articles of personal property upon it, to take care of it and work it under his control. The bona fides of the transaction was questioned, but that certainly was for the jury. Nothing is better settled in this state than that the purchaser of personal property at sheriff's or constable's sale, may leave it in the possession of the defendant, as whose property it was sold, under any lawful contract of bailment: Myers *v.* Harvey, 2 P. & W. 478; Walter *v.* Gernant, 1 Harris 515; Craig's Appeal, 27 P. F. Smith 448. As to the cow, hogs, sleds and saddle, the case should have gone to the jury. There was some evidence that there had been a sale or gift of these articles by Smith to Wolf, but that was evidently a question for them.

As to the raft it was earnestly contended that there was no evidence of a sale by Wolf to Smith, or of any title in him. The facts as to the raft appear to be these: It had been got out by Wolf, under some arrangement with one Martin, to whom he was indebted, who was to take it, and, if he could, make his money out of it. Martin, however, refused to take the raft. Thereupon it was delivered to Smith, who was security for Wolf's debt to Martin, under an agreement that he was to run it, make what money he could out of it, and, if there was any surplus after paying the debt to Martin, Wolf was to have it. The raft was lying in Findlay's dam on Canoe creek. Smith sent a young man to mark the raft with his name, which he did accordingly, and Wolf was employed by Smith to run the raft to market. He procured on Smith's credit a rope for the use of the raft, ran it to the mouth of the creek where it was frozen up, and remained until the spring following, when it was run to Perryville, where it was seized and sold on an execution against Wolf by the defendant. We are not to be understood as saying that these facts were all proved, but there was evidence of them for the jury. Under these circumstances we think that the plaintiff was entitled to an affirmance of his first and second points, which were, First. That upon a sale of personal property only such delivery is required as the nature of the property is susceptible of. Second. That if the jury believe that George Smith took the raft for a debt due by Wolf to Martin, upon which he (Smith) was bail,

[Smith *v.* Crisman.]

and had paid, or was to pay and return the overplus, if any, to Wolf, after payment of the amount paid Martin and expenses, and in pursuance of such an arrangement had his name marked on the raft, put his cable on the raft, furnished the money for running the same, and paid the hands, he is entitled to recover. These points the learned judge below negatived. The third point was too broadly put; for though there may be some cases in which a concurrent possession is lawful, and this would seem to be one of them, yet, undoubtedly, as a general rule, there cannot be concurrent possession of the vendor and vendee of a chattel, which is susceptible of actual delivery. The principles governing this case are very fully considered in McKibbin *v.* Martin, 14 P. F. Smith 352, in which it was held that, where the subject of the sale is not reasonably capable of an actual delivery, a constructive delivery will be sufficient, and that in such case it is only necessary that the vendee should assume the control of the subject, so as reasonably to indicate to all concerned the change of ownership; and that where there has been a sufficient delivery, actual or constructive, and the vendee is in possession, the fact that the vendor is employed about the same in a capacity holding out no indicia of ownership, is not such a concurrent possession as the law condemns, and that these questions are for the jury. It is hardly necessary to add that a mortgage of personal property, or a delivery of it to hold as security for a debt or liability, falls within the same principles as govern absolute sales: Clow *v.* Woods, 5 S. & R. 275.

Judgment reversed and a *venire facias de novo* awarded.