# Newton Weller *v.* Edwin Meeder, Administrator of W. H. Ifft, deceased, Appellant.

*Sale of personal chattels—Retention of possession by vendor—Fraud.*

The retention of possession of personal chattels is fraud in law where the subject of the transfer is capable of delivery, and no honest, fair reason can be assigned for the vendor not giving and the vendee not taking possession.

*Possession of personal property—Fraud—Province of court and jury.* •

When the possession of personalty sold is inconsistent with the bill of sale, the law is settled, that it is not merely evidence to be submitted to the jury to draw a conclusion of fraud in fact but it is fraud in itself to be determined by the court.

*Sale of personalty—Possession—Fraud—Rule of Clow v. Woods.*

Sale was made by a mother of personal chattels under bill of sale, to a son, resident at a distance; the personalty was in her possession, on her own farm and in her own building. No transfer of possession took place. The son immediately leased the property to his mother and her apparent possession was uninterrupted; the son never exercised any act of ownership excepting the execution of the papers which no one but the mother and son and the scrivener had any knowledge of. Subsequently the son bought his mother's interest in the farm. The personal property was levied on by a creditor of the mother. *Held*, (1) that the transaction was fraudulent as to creditors of the mother and fell within the rule of Clow v. Woods; (2) that, the facts being undisputed, in a feigned issue between the son and the execution creditor of the mother, the creditor defendant was entitled to binding instructions.

Argued May 14, 1896.    Appeal, No. 102, April T., 1896, by defendant, from judgment of C. P. Butler Co., June T., 1896, No. 1, on verdict for plaintiff.    Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.    Reversed.    RICE, P. J., BEAVER and ORLADY, JJ., dissent.    Dissenting opinion by ORLADY, J.

Feigned issue to determine the ownership of certain personal property levied on by the sheriff as the property of Mary A. Weller and claimed by Newton Weller, plaintiff, as against Edwin Meeder, administrator of W. H. Ifft, deceased, defendant in the feigned issue and plaintiff in the execution.    Debt, $68.70.

Mary A. Weller sold certain personal property to her son,

the claimant and plaintiff in the feigned issue. The property remained on the farm occupied by the mother, the son being a resident of Pittsburg. The son immediately leased the personal property to his mother and subsequently purchased her life-estate in the farm. There was no actual delivery of the property, and the son did not come upon the premises at all after the purchase nor assume control other than that evidenced by the papers executed in the case and which were known only to the mother and son and the scrivener who drew them. The property was seized in execution for a debt due a creditor of the mother antedating the sale to the son and a feigned issue was framed in which the son was plaintiff and the creditor defendant. The case was tried before GREER, P. J., and verdict rendered for the plaintiff.

The facts as outlined above are more fully stated in the opinion of the Superior Court.

The court, GREER, P. J., charged the jury, inter alia, as follows:

· · · · Mrs. Weller and Newton say that Newton had loaned her and paid money to the extent of about $200, and she had given him this property; she must give him some such possession of the property as the nature and circumstances of the case require. If a man buys a horse from another and does not take possession the contract is not completed; there must be possession in the buyer and until possession is in the buyer, the buyer has no title; there must be possession in Newton Weller; he must have received possession from his mother, and if he did not receive possession, then the title would remain in his mother as against creditors [but possession is not always the turning over property to another; it is not at all necessary where parties are living on the same farm that they take it away; the law requires no nonsense;] [3] [if a father sells property to his son living on the same farm the son does not need to go away to get possession, if the son is living with his father, but suppose the son is living on another farm and buys a horse; he could not let him stay there, unless he intended to let his father use that horse.] [4]

The law requires such possession as the circumstances and nature of the property may require. If two men are living on

the same farm and one sells the other property he does not need to go through any form of any kind to give possession. [In this case, if Newton Weller had been away from his mother at another place and bought this property, he would be bound to take possession of it as against creditors; it should be taken by him to his home, if he intended to use it, unless at the time he intended that his mother should keep it on the farm and use it. If it was the intention of both parties at the time that Newton bought this property to let his mother keep it on the farm and use it, then it was not necessary to take it away, but he must satisfy you that that was the intention; that his mother was to use the property on the farm. If he does not satisfy you of that fact, then there would be no possession.] [5] He could recover as against his mother, but not where creditors would come in. [If you believe from the evidence of the two parties that he was to allow the property to remain on the farm for her use, then we say all the possession was given that was necessary.] [6] If you believe that this was not a sale but a turning over to secure Newton for a debt, then Newton could not recover. The law does not allow in this state what is called a chattel mortgage; he could not take an assignment of this property to pay him and hold it as security for a debt; but that is not pretended on his part; it depends on the contract of the parties, upon the nature and circumstances surrounding their contract and sale. [You have heard the mother who is unfortunate in marriage; her husband does not attend to business as he ought, and you have her son who is away working and helping his mother. He could not take this property as security, but he can buy it and own it and rent it to his mother, and it does not make any difference whether his mother pays the rent or not. If he sees fit, in the kindness of his heart, to let her have it, that will do, if you find that the sale was made.] [7] You must find that Mrs. Weller was paid for this property; that there was an absolute sale, and that there was a lease by Newton. You must find that there was a delivery to Newton; that he had possession, and if Newton turns around and leases it to his mother, the creditor could not take it away. If there was any fraud on the part of Newton and his mother, judgment must be for Mr. Meeder, and if there was no fraud and it was intended by both parties that she was to use it on the land and

everything was honest in regard to it, the verdict ought to be for Newton Weller; otherwise the verdict ought to be for Mr. Meeder.

### DEFENDANT'S POINTS.

1. The claimant having admitted that he never took possession of the property levied on but allowed it to remain in possession of the vendor (the defendant in the execution) after he had purchased the same in the same manner as before, this was not such a change of possession as the law requires and the property remains subject to the claims of her creditors. *Answer.* We answer this point this way, as we have instructed you before: If it was the intention of Newton to allow his mother to use this property on the land and they were both honest in that intention, then it would be a delivery to Newton and such possession in him as would give him title as against creditors. [8]

2. Under all the evidence offered by the claimant the verdict should be for the defendant for all the articles included in the bill of sale from defendant, Nettie Weller, to the claimant, bearing date October 12, 1893. *Answer.* We refuse that. [9] .

Plaintiff offered in evidence the transfer of personal property from Mary A. Weller to Newton Weller, the claimant, marked exhibit "B," which is set out in the opinion of the Superior Court; also a lease of the personal property from the claimant Newton Weller to his mother, Mary A. Weller, which were admitted under objection by defendant. [1, 2]

Verdict for plaintiff. Defendant appealed.

*Errors assigned* were, (1, 2) admission of evidence, reciting same; (3–7) error in portions of the charge of the court as indicated in brackets, reciting same; (8, 9) answer to defendant's first and second points, reciting same.

*W. H. Lusk*, for appellant.

*J. D. Marshall*, for appellee.

OPINION BY WILLARD, J., July 16, 1896:

Mary A. Weller, the mother of Newton Weller, appellee, was living with her husband on a farm in Muddy Creek township, Butler county, Pa., in the year of 1893. According to her tes-

timony, she had lived on the same farm for thirty years prior to April 1, 1895. She had a life interest in the farm, under the will of her husband's father.

W. H. Ifft was a merchant in the borough of Zelienople in the same county, and from time to time sold merchandise to Mrs. Weller for which she gave him a judgment note on November 27, 1891, signed by herself and her husband, amounting to $68.70. Upon the farm and in the house in which she lived she had certain personal property necessary for housekeeping purposes and conducting the farm.

Newton Weller, her son, did not live with his parents but had employment at Pittsburg and there resided. Prior to October, 1893, Newton had paid for his mother certain debts contracted by her, amounting to $210. In payment of this debt, Mrs. Weller, on October 12, 1893, went to Butler and executed the following bill of sale to her son:

"This indenture made the twelfth day of October, A. D. 1893, by and between Mary A. Weller of the first part and Newton Weller of the second part,

"Witnesseth; That the said party of the first part, for and in consideration of the sum of two hundred dollars lawful money of the United States, the receipt whereof is hereby acknowledged, sells transfers, and conveys unto the second party all the following property, to wit: Two horses, two cows, two calves, set single harness, set double harness, one wagon, one buggy, one mowing machine, one harrow, one plow, one hay fork, 35 bushels of wheat, 51 bushels buckwheat, 160 bushels oats, four or five acres of corn in shock, three pigs, 50 bushels potatoes, five tons hay, more or less, and all the household furniture in the house of the first party, to have and to hold to him, the said second party, his heirs and assigns forever.

"Witness my hand and seal this 12th day of October, 1893.
(Signed)    "MRS. MARY A. WELLER [SEAL]
"Witness JOHN D. MARSHALL."

This bill of sale was duly acknowledged on the same day before John D. Marshall, notary public.

Mrs. Weller sent this bill of sale to her son at Pittsburg and two days thereafter he executed a lease of the same property to his mother for one year, at $12.00 per annum. On Novem-

ber 9th of the same year Mrs. Weller and her husband executed and delivered to Newton a deed of Mrs. Weller's life interest in the farm, which was duly recorded in Butler county, in deed book 147 at page 53; and immediately thereafter Newton leased the farm to his mother at a rental of $44.00 per annum.

As to the delivery of the possession of the personal property, Newton Weller in his cross-examination, says :

" Q. As I understand you, your mother owned the farm for her life. A. Yes, sir. Q. You bought that from her? A. Yes, sir. Q. When? A. It was between 1892 and 1893. Q. This personal property you speak of all belonged to your mother? A. It did. Q. You bought it from her by one of these papers you have shown? A. Yes, sir. Q. You allowed it to stay on the farm? A. Yes, sir. Q. You never took it away? A. No, sir. Q. And two days after that you turned around and leased it to her? Your bill of sale is dated the 12th day of October, 1893, and on the 14th day of October you made a lease of it to her? A. I couldn't just say. Q. A month after that you leased the farm to her? A. Yes, sir. Q. You have never had possession of this personal property in dispute? You never handled it, used it or anything? A. No, sir. Q. Left it with her the same as before? A. Yes, sir."

On the same subject Mrs. Weller in her cross-examination testified as follows : " Q. How long have you been living on this farm where you live now? A. Thirty years the 1st of April. Q. You were living there on the 12th of October, 1893? A. Yes, sir. Q. On that day you were the owner of two horses, two cows, etc.? A. Yes, sir. I was. Q. They were all on the farm? A. Yes, sir. Q. Your son was living in Pittsburg? A. Yes, sir. Q. On that day you sold them to him by a bill of sale? A. Yes, sir. Q. What did he do with them on that day? A. He left them on the farm for me to use. Q. These three pigs? A. They were not the same stock of pigs. Q. They were descendants? A. Yes, sir. Q. You went on and used these articles the same as before? A. I did. Q. And have remained in possession of them ever since? A. Yes, sir. Q. Did you ever deliver possession of them to your son? A. Yes, I gave him possession of everything. Q. Outside of this bill of sale you didn't give possession except as shown by this bill of sale? A. No, sir."

On the 29th of November, 1894, W. H. Ifft died and Edwin Meeder was appointed administrator of his estate. On December 26, 1894, the administrator entered judgment on the note of Mrs. Weller, and on January 5, 1895, levied on all the right, title and claim of the defendant in and to two horses, one heavy wagon, one buggy, one set of double harness, one single harness, one mower, one spring tooth harrow, one cow, one heifer, two calves, three hogs, ten pictures, one mirror, one hanging lamp, five beds and bedding, carpets, dishes, and all other household goods and personal property belonging to the defendant. On January 9, 1895, this personal property was claimed by Newton Weller as his property, by notice served on the sheriff. The sheriff applied for a rule to interplead to which both claimant and execution creditor made answer. The rule was made absolute and an issue awarded to try the right of property wherein Newton Weller was made plaintiff, and Edwin Meeder, administrator of W. H. Ifft, deceased, defendant. On February 4, 1896, the jury under instructions from the court as to the law returned a verdict in favor of the plaintiff for the property described in the writ.

It was said by Mr. Justice SHARSWOOD in McKibbin v. Martin, 64 Pa. 352, that " The principles settled in Clow v. Wood, 5 S. & R. 275, have been recognized and affirmed by a beadroll of subsequent decisions which it would be a mere affectation of learning to cite." That case established certain rules in the sale and transfer of personal property :

First, that retention of possession is fraud in law whenever the subject of the transfer is capable of delivery, and no honest and fair reason can be assigned for the vendor not giving up and the vendee taking possession.

Second, by GIBSON, J. : " The inclination of my mind is, to give the statute a liberal, perhaps an enlarged construction, by putting the rule requiring a change of possession, on grounds of public policy and confining its exceptions to those cases, where, from the very nature of the transaction, possession either could not be delivered at all, or at least, without defeating fair and honest objects intended to be effected by, and which constituted the motive for entering into the contract. Where possession has been withheld pursuant to the terms of the

agreement, some good reason for the arrangement, beyond the convenience of the parties, should appear."

Third, where from the nature of the transaction possession cannot be given, the parties ought in lieu, to do everything in their power to secure the public from that deception which the possession of property without the ownership always enables a person to practice. In every case where possession is not given, the parties must leave nothing unperformed within the compass of their power, to secure third persons from the consequences of the apparent ownership of the vendor.

Fourth, when the possession is inconsistent with the deed, the law is settled, that it is not merely evidence to be submitted to a jury to draw a conclusion of fraud in fact, but it is a fraud in itself to be determined by the court.

Instead of the supposed ironclad rule that actual possession of the thing sold must be taken by the vendee without regard to circumstances or the nature and character of the thing sold, the rule of Clow v. Woods is sufficiently broad to cover every exception contained in the decisions of our Supreme Court from 1819 to the present day.

The question we are to consider in this case is, what constitutes delivery of possession. A careful study of the adjudicated cases in our Supreme Court develops no inclination to abate one jot the salutary rule laid down in Clow v. Woods. It stands unshaken as a beacon light to guide the lawyer and judge in arriving at correct conclusions involving questions similar to the one presented for our consideration in this case.

In the long line of decisions on the subject, the courts have considered the character of the property transferred, the relation of the parties, the intended use of the property, the facts of each case, whether the want of sufficient delivery constitutes fraud in law, or whether the facts should be submitted to a jury to determine the sufficiency of the delivery as against creditors or otherwise. It has been held that where a father and son occupy the same premises, a bona fide sale of the personal property thereon from one to the other, accompanied by assumption of ownership on the part of the vendee, was not fraudulent per se, although the vendor remained on the premises in the vendee's employ. And so it is held in transactions between brothers, and brothers and sisters.

In the case of the bona fide sale of a store of goods, it has been held that the transfer of the key by the vendor to the vendee was sufficient, although the vendor remained in the store as an employee. So the bona fide turning over of a key to a house and a sale of the furniture therein and the departure of the vendor from the premises, vested a good title in the vendee as against creditors.

The sale of piles of pig iron in the yard, with the marks of the vendee immediately placed thereon, constituted a good delivery; and so as to rafts, timber and other property not capable of immediate transfer on account of its bulk. Most of the cases however involve the question whether there are such changes of possession as the nature and circumstances of the case admit of, and this question is for the jury where there is any doubt.

In another case where " A " purchased the homestead and farm of " B " at sheriff's sale " A " took possession thereof and subsequently employed " B " as a farm hand to work the farm. After taking possession of the farm "A " purchased of " B " his household furniture and the stock and farm implements on the farm and leased them to the wife of " B." It was held that it was for the jury to say whether the delivery was sufficient under the circumstances as against the creditors of " B." The principal cases in Pennsylvania bearing upon this branch of the subject are: McVicker v. May, 3 Pa. 224; Forsyth v. Matthews, 14 Pa. 100; Hugus v. Robinson, 24 Pa. 9; Dunlap v. Bournonville, 26 Pa. 72; Chase v. Ralston, 30 Pa. 539; Barr v. Reitz, 53 Pa. 256; Billingsley v. White, 59 Pa. 464; McKibbin v. Martin, 64 Pa. 352; Evans v. Scott, 89 Pa. 136; Smith v. Crisman, 91 Pa. 428; Pearson v. Carter, 94 Pa. 156; Barr v. Boyles, 96 Pa. 31; Rothermel v. Marr, 98 Pa. 285; Crawford v. Davis, 99 Pa. 576; McClure v. Forney, 107 Pa. 414; Renninger v. Spatz, 128 Pa. 524; McGuire v. James, 143 Pa. 521; Garretson v. Hackenberg, 144 Pa. 107; Janney v. Howard, 150 Pa. 339; Bell v. McCloskey, 155 Pa. 319; Goddard, Hill & Co. v. Weil & Co., 165 Pa. 419; Williams & Co. v. Rolling Mill Co., 174 Pa. 299.

" Where the possession does not follow, as well as accompany the transfer, it is a fraud in law without regard to the intention of the parties, and becomes a question for the court and not

for the jury: " Young v. McClure, 2 W. & S. 147. "A symbolical, constructive or temporary delivery of personal property is not sufficient to change the ownership as to creditors; there must be an actual delivery at the time of the transfer, and a continuing possession; otherwise the sale, although bona fide as between the parties themselves, is fraudulent in law:" McBride v. McClelland, 6 W. & S. 94.

" Where, in the sale of personal property, the possession does not follow and accompany the transfer, it is a fraud in law without regard to the intention of the parties, and is a question for the court and not for the jury:" Milne, Browne & Co. v. Henry, 40 Pa. 352. And to the same effect is Dewart v. Clement, 48 Pa. 413.

When the vendor is in possession at the time of the sale, the want of change of the possession is not merely evidence of fraud, but such a circumstance, per se, as makes the transaction fraudulent as to creditors and subsequent bona fide purchasers, the law imputing fraud to the first purchaser because of his neglect to take possession: Stephens v. Gifford, 137 Pa. 219.

The facts in this case are not in dispute. It was therefore for the court to say, under the undisputed facts, whether the sale of the personal property by Mrs. Weller to her son was a fraud in law as against her creditor, the administrator of W. H. Ifft. In our view of this case we do not think it necessary to discuss the assignments of error at length.

The bill of sale and lease of the personal property, exhibits "B" and "C" under the offer, were properly admitted in evidence at the time. The first and second specifications of error are overruled.

The language of the court in its charge, complained of in the third specification of error, was unexceptionable and the specification is overruled.

The proposition of the judge in another part of his charge that where a son and father occupy separate farms, the son buying a horse of his father and suffering it to remain in the father's possession, would be a fraud in law, *unless the son intended the father to use the horse on his own farm*, is misleading and gave the jury to understand that the intention of the son to have his father keep the horse in his own possession was sufficient to protect the property from the claims of the father's creditors.

This instruction was properly assigned for error and the fourth assignment is sustained. Again the judge says in his charge, "If it was the intention of both parties at the time that Newton bought this property to let his mother keep it on the farm and use it there, it was not necessary to take it away, but he must satisfy you that was the intention." This instruction would be proper in a controversy between mother and son, but the creditor is entirely lost sight of. The attention of the jury by this language is directed to nothing but the intention of the parties, and they were virtually instructed if they believed such intention existed that was the end of the matter and further delivery of possession was unnecessary. The fifth specification of error is sustained.

The jury were also told by the judge, "If you believe from the evidence of the two parties (mother and son) that he was to allow the property to remain on the farm for her use, then we say all the possession was given that was necessary." Fortunately for creditors, their rights cannot be swept away by the intention of parties in this manner. If such were the rule the apparent possession of personal property as heretofore held would be idle and useless to those giving credit on the strength of possession. In Janney v. Howard, supra, the judge in the court below charged the jury as follows: "Now if Janney was legally under all the circumstances of the case which you have heard, the owner; if you shall be satisfied upon consideration, that as between Kelly and himself, Janney was to be considered at this time the owner of the property, that he had acquired a valid title to it by the purchase which he alleges to have taken place, then notwithstanding the fact that Kelly had previously been the owner of the property, notwithstanding the fact that Kelly owed Howard the amount represented by Howard's indebtedness, your verdict would have to be, would properly be as a matter of honesty and ought to be as a matter of law, in favor of the claimant, Mr. Janney." Upon this charge Mr. Justice HEYDRICK remarked, in delivering the opinion of the Supreme Court, "The vice of this instruction is that it makes the validity of the transaction as between Kelly and Janney the test of its validity as against the execution creditors of the former, whereas it is but one step towards perfection of title in the latter case." The sixth assignment must be sustained.

The language of the judge to the jury, complained of in the 7th specification of error, as to the unfortunate marriage relation between Mrs. Weller and her husband, and that her husband did not attend to business, was not warranted by the evidence. It should not have been gratuitously thrown into the jury box. For that reason the specification is sustained.

The eighth specification involves the same question raised by the sixth, and for the same reasons is sustained.

The defendant's second point in the court below should have been affirmed. It called for binding instructions in favor of the defendant in the issue which should have been given. Every item of property enumerated in the bill of sale was capable of immediate delivery. It was in the possession of Mrs. Weller and at the time of the sale she was the owner of and in possession of the farm and buildings. It is idle to say that the delivery of the bill of sale to her son at Pittsburg, and the execution of the lease by the son back to the mother was a delivery of possession as against the claim of creditors. It is equally idle to say that the intention of the parties to have it remain where it was for use in conducting the farm would be a delivery. No matter how meritorious the conduct of the son toward the mother, no matter if it would have been an idle ceremony to remove the furniture and other property and deliver it to the son, it was susceptible of such delivery and the delivery was not made. In Steelwagon v. Jeffries and Wife, 44 Pa. 412, Mr. Justice WILLIAMS said, " Why is not the transfer of household property to be actual and exclusive, like that of any other personal property ? It is as capable of manual occupancy and removal as almost any other kind. If the sale be actual, it usually is removed; if it be only for the purpose of securing it against creditors, why shall it not stand on the same platform with other property, capable of delivery and change of possession ? "

With the imperative duty resting upon them of doing " everything in their power to secure the public from that deception which the possession of property without the ownership always' enables a person to practice," they did nothing to change the possession or apparent possession. Actually, by notice, sign, symbol or otherwise, no change of possession took place in any visible manner. The mother continued in her own house, on her own farm, with the same possession of the property named

in the bill of sale that she had enjoyed for years. The son 'did not come to receive delivery of the goods he had purchased. He never exercised any act of ownership except the execution of certain papers which no one but the mother and son, and the scrivener who drew them, had any knowledge of. Under the facts of this case nothing remains but to enforce the rule of Clow v. Woods, as the facts do not bring it within the rule of any other case which is an exception to or modification of that case.

The counsel for the appellee, in the history of the case, frankly states : " The intention was to make the transaction correspond with the facts in Renninger v. Spatz, 128 Pa. 524." The facts in this case are clearly distinguishable from those of Renninger v. Spatz.

The sale of this property was made on October 12 and · leased by the son to the mother on the 14th. It was then in her possession, on her own farm and in her own building. The transfer of the farm was by deed, November 9, 1893, recorded in deed book 147, page 53.

The undisputed testimony is that the sale of the personal property took place in October and no other sale is claimed by either party at any other time. The claim of the creditor was defeated by the sale made at that time, or not at all.

In Renninger v. Spatz, Spatz had, prior to the sale of the personal property, purchased the farm and buildings containing the same at sheriff's sale and received a sheriff's deed therefor. In the language of Justice McCOLLUM, he was in full possession and control thereof. The property which was the subject of the sale was on the farm of the vendee and intended for use there. On his own farm, he purchased the property and employed Snader as a farm hand thereon and leased the personal property to Mrs. Snader. It was levied on as the property of Snader and under this state of facts the Supreme Court, through Mr. Justice McCOLLUM, decided that the question of sufficiency of delivery was properly submitted to the jury.

In Pressel v. Bice, 142 Pa. 270, the same court decided as follows: " The court below submitted to the jury the question whether there was such a change of the possession of the property in controversy as was reasonable under the circumstances. The said property consisted of a steam engine attached to a portable sawmill. Both were on the premises of the plaintiff

at the time he purchased them from James Dodson. Had they been upon the premises of the latter, the case would have been different, and it might have been the duty of the learned judge below to instruct the jury, as matter of law, that there was not a sufficient change of possession, but the fact that the property was actually on Pressel's property, at the time of the sale, justified the court in submitting that matter to the jury."

We are aware that a change in the location of property is not always necessary or practicable, but where such change is not necessary or practicable the vendee must assume such control of the property as to reasonably indicate a change of ownership.

In Buckley v. Duff & Sons, 114 Pa. 596, where there was no change in the location of the machines purchased by Buckley, they were surrendered to him and he formally leased them to Graves and Marland and had them insured in his own name. They remained in the mill, the place where they were made to be used, and Buckley received full rent therefor for seven years before they were levied upon. In that case Justice CLARK said, "It may be, perhaps, that this was of no avail to defeat the claims of existing creditors or bona fide purchasers," and the judgment was reversed on the ground that the claim of the execution creditor accrued subsequent to the transfer and there was no evidence of indebtedness to any one on the part of the vendors at the time of the sale.

In Garretson v. Hackenberg, supra, where a lumbering outfit was sold and the location of the property was not changed, the plaintiff went to the camp of Burt, the vendor, who was largely indebted to him, took from Burt a bill of sale and the surrender of the property, also an assignment of Burt's contracts with Goodyear, on whose land and for whom he was lumbering, hired the men who were working for Burt, put additional men on the job, hired Burt as foreman and notified Goodyear of the assignment of the contracts, who recognized Garretson and continued the contracts with him. It was held that the question of sufficiency of delivery was for the jury.

In Bell v. McCloskey, supra, the facts were that Bell, the plaintiff, was in possession of a dairy farm as lessee. He had in his employ to manage the farm an experienced dairyman by the name of John Price. Bell leased the farm to Price and by

a bill of sale sold him the cows, horses and farm implements on the farm, Price giving his notes therefor. Subsequently he could not pay the notes and he surrendered the property again to Bell and gave him a bill of sale. Bell then leased the farm, cattle etc. to Price. After the transfer of the leasehold interest in the farm and personal property, Price continued in possession as manager for Bell. Subsequently an execution was issued against Price and twenty cows were sold thereon by the sheriff. In an action by Bell against the sheriff the jury were instructed that if they were satisfied that the transaction was honest and for a valuable consideration, followed by acts intended to transfer the possession as well as the title, and that the vendee assumed such control of the property as reasonably indicated a change of ownership, the transaction must stand. This was affirmed by the Supreme Court.

In this case it will be observed that Bell was in possession of the farm as lessee. He did not assign his title, but sublet or leased to Price. When he took back the property he was on his own leasehold and employed Price as manager in the same position he had occupied originally, and when Price made the transfer of the cows he also transferred his lease at the same time, which gave Bell possession of the farm. The facts in this case are very imperfectly reported and whether the claim of the execution creditor subsisted at the time of the alleged transfer or accrued after that time does not appear. These cases are all distinguishable in their facts from the case we are now considering. Had the most experienced detective been stationed upon the farm of Mrs. Weller at the time of the alleged transfer to her son, he never could have discovered any such assumption of control of the property by the son as to reasonably indicate a change of ownership. Had Mrs. Weller sold any of this property to a bona fide purchaser the claim of such purchaser would have been incontestably good and perfect as against Newton Weller. At the time of the delivery of the bill of sale and alleged transfer of the personal property to Newton Weller, he was not in possession of nor did he own the farm, and therefore there was no presumption that the possession of the personal property had passed to him with the ownership of the land. The fact that one month afterwards he became the owner of his mother's life interest in the land did not affect the

sale of the personal property already consummated. No subsequent sale is alleged. The transaction must stand or fall according to the circumstances at the time of the sale:—It must fall. There was no delivery of possession by Mrs. Weller to her son, and as against his mother's creditor, whose claim existed at the time, he held no title.

To affirm the proposition of the trial judge would in effect make the rule, settled in Clow v. Woods, of no practical value. The credit system of 1819 has expanded and kept pace with the increase of the business and population of the country and the protection of the statute as applied in that case, is as imperative to-day as it was then. Credits founded directly or indirectly on the possession and apparent ownership of personal property are matters of every day occurrence, and the rule so wisely established should be firmly maintained, so that possession and apparent ownership shall be the guaranty of credit and good faith and no one shall be deceived thereby. There is nothing in the facts of this case to make it an exception. The ninth specification of error is sustained.

And now, to wit, July 16, 1896, after argument by counsel and consideration by the court, it is ordered and adjudged that the judgment of the court of common pleas of Butler county in this case be reversed, and that judgment be entered for the defendant in the issue and that he do recover his costs.

RICE, P. J., BEAVER and ORLADY, J.J., dissent. Opinion to be filed later.

DISSENTING OPINION BY ORLADY, J., October 21, 1896.

I am not willing, under the facts as found, to adopt the conclusion reached by the majority opinion in determining, as fraudulent in law, the sale of this personal property.

The bona fides of the transaction was established by uncontradicted evidence and a verdict. The fact that the deed to the son for, and lease to the mother of, the life estate were executed one month after the sale and lease of·the personal property, is not a fatal objection to the.integrity of the first transaction, as all the transfers were complete and the deed on record for more than a year before the execution creditor sought to enforce the judgment against the property which was on the

farm leased to Mrs. Weller. No act of plaintiff tended to deceive the defendant, so that for this case all the transfers may be treated as having been contemporaneously executed.

There was no statutory provision, or decided case, in this state requiring the placing on public record the written evidence of title to this personal property. The design of the law, in requiring a visible physical separation of property from a vendor, is to give notice of a transfer of the title, to all persons who are or may be interested in it, to the end that fraudulent sales may be prevented.

I feel, the exhaustive opinion filed by my Brother WILLARD gives undue importance to the observance of the forms to be followed. There was in the minds of both the parties concurring in this transfer in accordance with the contract the intent of one to deliver and the other to receive: Goss P. Co. v. Jordan, 171 Pa. 474. The undisputed evidence being that after the sale Mrs. Weller had possession of it under the lease and had no other interest in it.

The exceptions so plainly stated in Clow v. Woods, 5 S. & R. 275, are as freely applied as the sterner rule invoked in the opinion filed. And there can be no mistaking the necessity for the exceptions or the soundness of the legal reasons supporting them; they have ever been so employed to thwart imposition induced by false credit and frustrate fraudulent combination.

The value of a decision is to be measured in the light of its supporting facts, and in determining whether a conclusion of law in any adjudicated case is a precedent in a subsequent one, the value of the first, usually, is measured by the similarity or dissimilarity to the second in its controlling facts, and even if the court, announcing the conclusion, misapprehends or mistakes the facts, the conclusion, to be of value as a precedent, must be taken as applicable to the facts as assumed by the court; they as concerns the judgment are the facts, and whether existing or nonexisting either prompt or compel the conclusion of law that determines the judgment: Yoders v. Amwell Township, 172 Pa. 447.

There is in every case of this character a well defined line of demarcation to be observed, which is established on the double thought; possession of personal property is prima facie evidence of ownership, and, to sustain a questioned title, where the pos-

session is not exclusive, the evidence must be clear, precise, and indubitable; and conforming to these preserves legal principles and does exact justice.

The Supreme Court has frequently noted exceptions, without relaxing the force of the general rule announced in Clow v. Woods. In Dunlap v. Bournonville, 26 Pa. 72, the court say :

" Now certainly there is no law prohibiting persons standing in near relations of business or affinity from buying from each other; or requiring them to conduct their business with each other in a special form. It must be, therefore, that when there is a transfer of possession corresponding with the sale, and with the nature of the property sold, and with the relations of the parties, and such as is naturally expected under the circumstances, and it does not appear is a sham or cover, then the forms of law are complied with, and the sale is valid, unless actual fraud be shown."

Whilst this case is placed on the very outer verge of settled principles in Steelwagon v. Jeffries, 44 Pa. 407, it is unqualifiedly followed in McMarlin v. English, 74 Pa. 296, and other cases.

In Hugus v. Robinson, 24 Pa. 9, it is said: " We are always reminded in such cases as this, that if the transaction complained of is allowed a wide door is left open by which fraud may be perpetrated. Grant that it is so. In seeking to catch rogues we must not ensnare honest men, we must not become so zealous against fraud as to restrain the free action of honesty, a result that would be most disastrous. . . . To require a delivery to be exclusive, would be to declare void all sales of undivided interests ; and to require it to be notorious would violate the ordinary customs of business ; for most people make purchases in such a way that their acts never become notorious except in aid of a lawsuit."

In Billingsley v. White, 59 Pa. 464, the Supreme Court say: " But is it essential to such separation that the property shall be removed from the vendor, or the vendor from the property, so that there shall be an actual and visible separation between them measurable by space or distance ? Must the vendor absolutely cease to have any connection or contract with the property after its delivery, not as owner, but as agent or servant of the vendee, on pain of having the sale declared fraudulent?

" To hold this would be going beyond the established doctrine of our own decisions, and the reason and requirements of the law. Separation of the property from the possession of the vendor.implies nothing more than a change of the vendor's relation to it as owner, and consists in the surrender and transfer of his power and control over it to the vendee."

The object of this purchase by Newton Weller was sensible, and the intended use of the property feasible, only if used in the same place by the same persons, after as before the sale. Any other treatment of it would have defeated the very purpose of the transaction.

His location and business (an electrician in Pittsburg) precluded all thought of taking this property to his residence or place of business, and while the attending circumstances of the sale are nearly always subject to the will of the parties, the designing and crafty can readily add a false sign, change books, remove and return property to technically comply with the severest requirement; but to make such acts so susceptible of intrigue the determining ones is being strict as to the " tithe of mint, anise and cummin " and forgetful of the " weightier matters " as suggested in Hugus v. Robinson, supra. And in McKibbin v. Martin, 64 Pa. 352: " It often happens that the subject of the sale is not reasonably capable of an actual delivery, and then a constructive delivery will be sufficient," is given as the true rule, where it would not be impossible, but injurious and unusual to remove the property from where it happens to be at the time of the transfer, and instances of a vessel at sea, warehoused goods, bricks in the kiln, timber in the woods, articles in process of manufacture, sales between relatives furnish ample argument to sustain the common sense of the discriminations.

In Evans v. Scott, 89 Pa. 136, the distinction is plainly made between the earlier cases of Clow v. Woods, 5 S. & R. 275; Babb v. Clemson, 10 S. & R. 419; Hoffner v. Clark, 5 Wharton, 545; Brawn v. Keller, 43 Pa. 104; Steelwagon v. Jeffries, 44 Pa. 407; and the line of cases which to some extent modified them, many of which are reviewed in McKibbin v. Martin, supra, and Evans v. Scott, decides " the question should have been submitted to the jury, whether the change of possession was actual or bona fide, not pretended, deceptive and collusive, and

whether such change of possession was all that could *reasonably* be expected of the vendor, taking into view the character and situation of the property and the relations of the parties." The same language is adopted and followed in Goddard et al. v. Weil, 165 Pa. 419.

In Stephens v. Gifford, 137 Pa. 219, an able, exhaustive and convincing review of the decisions is presented with special significance, showing the necessity for applying legal principles to proven facts, instead of making a single standard of duty or liability for every case.

In Crawford v. Davis, 99 Pa. 576, it is said: "No such change of possession as will defeat the fair and honest object of the parties is required," and followed in Cessna v. Nimick, 113 Pa. 70.

And in McGuire v. James, 143 Pa. 521, the present Chief Justice says: "The alleged insufficiency of plaintiff's possession, or whether there was in fact such change of ownership and possession as under the circumstances could reasonably be expected, taking into view the character and situation of the property and relations of the parties, was a question of fact for the jury, and not one of law exclusively for the court."

In Garretson v. Hackenberg, 144 Pa. 107, even broader ground is taken : "It is quite true that a more formal delivery of the property could have been made. The several kinds of property might have been collected together, and after a formal delivery of the possession thereof to the plaintiff by Burt, the latter might have withdrawn from the premises entirely, and a new manager might have been placed in charge; but in view of the character and situation of the property, the use that was being made of it, etc., no such ceremony was necessary to a valid sale and delivery thereof, even as against other creditors of the vendor. Unusual and unnecessary formalities in such transactions are generally a badge of fraud, rather than of honesty." This was followed in Janney v. Howard, 150 Pa. 339, and the supporting opinion in Bell v. McCloskey, 155 Pa. 319 : "It is quite true that a more formal delivery might have been made. . . . . It seems to us to be a mixed question of law and fact, and that if the jury were satisfied that the transaction was honest and for a valuable consideration, followed by acts intended to transfer the possession as well as the title, and that

the vendee assumed such control of the property as reasonably indicated a change of ownership, the transaction must stand."

The case should be reversed, but another trial should be had to submit to a jury the whole question under proper instructions.

To hold this sale fraudulent in law under its facts, practically precludes the usual and ordinary transfers of personal property of like kind between parties living together or standing in near relations of business or affinity, and in effect nullifies the distinctions recognized by Clow v. Woods, McKibbin v. Martin, Bell v. McCloskey, and many others.

RICE, P. J., and BEAVER, J., concur.